WEBB-KUNZE CONSTRUCTION COMPANY, Appellant, v. GILSONITE CONSTRUCTION COMPANY and ANHEUSER-BUSCH BREWING ASSOCIATION.

Division Two, March 26, 1920.

1. **EXCAVATIONS: Measurements: Statute Part of Contract.** The statute (Sec. 11971, R. S. 1909) applies to contracts for making earth excavations and must be read as a part of every contract pertaining thereto. Any rates expressed in the contract must be considered in connection with the statute.

2. ———: ———: **Trenches: Pier Holes: Special Agreement.** The statute (Sec. 11971, R. S. 1909) provides that earth excavations, where no special agreement is made as to measurements, shall be measured by the cubic yard, and that for trenches and pier holes double measurements shall be allowed. The contract provided that the price for excavating trenches should be $1.15 "per cubic yard." *Held,* that there was no special agreement as to the measurement of trenches, but the contract called for the statutory "cubic yard," and the contract and statute, when considered together, meant that there should be twice as many cubic yards in the same number of cubic feet in the excavation of trenches as there are in other excavations. And the same is true of pier holes; where the contract said that the price for the excavation for pier holes should be $2 "per cubic yard," it meant that the whole number of cubic yards of 27 cubic feet each thus excavated should be doubled. In each case the words "cubic yard" used in the contract, when applied to trenches and pier holes, meant just one-half the volume of an ordinary cubic yard.

3. ———: ———: ———: ———: ———: **In Specifications.** The contract made the specifications "in their entirety" a part of the excavation contract, and they provided that "proposals for the foregoing work are to be based on the cubic yard," first, "for the

trenches for retaining walls," and, second, "for the main body of the excavation," and that "estimates are to be based upon the actual amount of material removed according to surveys taken from time to time, by a competent engineer employed by the owner." *Held*, first, that the last clause was not inserted for the purpose of indicating how measurements should be made; but for the purpose of designating by whom they should be made; and, *second*, there was no special agreement as to the measurements, and the statutory cubic yard was meant, and the statute says that for excavations for "trenches and pier holes double measurements shall be allowed."

4. ———: ———: Interpretation of Contract: Monthly Settlements. The interpretation and construction which the parties themselves place upon a contract will be adopted by the court where the contract is ambiguous and reasonably susceptible of different constructions; but monthly payments of eighty-five per cent for work completed, and stated accounts showing the estimates of the excavation work done in cubic yards for trench work and the value thereof, do not indicate that by the words "cubic yards" was meant anything else than the statutory cubic yard, and are not to be considered as a construction of the contract that the contractor was not to be allowed double measurement for such work, as the statute required, unless there is special agreement to the contrary.

Appeal from St. Louis City Circuit Court.—*Hon. Thomas C. Hennings*, Judge.

REVERSED AND REMANDED (*with directions*).

*Kinealy & Kinealy* for appellant.

(1) There can be no question of the right of the Legislature to enact Sec. 11971, R. S. 1909, regulating weights and measurements. Ex parte House v. Mayes, 227 Mo. 617. (2) No custom or usuage can nullify the statute. Ex parte House v. Mayes, 227 Mo. 617; Green v. Moffett, 22 Mo. 529. (3) Section 11971 must be read into the contract here in question the same as if set out therein at length. Zellers v. Surety, 210 Mo. 86; Henry Co. v. Salmon, 201 Mo. 136; Isenhour v. Barton Co., 190 Mo. 163; State ex rel. v. Rubber Mfg. Co., 149 Mo. 181; Reed v. Painter, 129 Mo. 674; State to use v,

Berning, 74 Mo. 87.   (4) Estoppel as a defense must
be pleaded.   McClure v. Bank, 263 Mo. 128; Turner
v. Edmonston, 210 Mo. 411; Keeney v. McVoy, 206 Mo.
42.   (5) To constitute an estoppel by conduct, the other
party must have changed his position to his detriment
or in some other manner suffered injury.  First Natl.
Bank v. Ragsdale, 171 Mo. 168; De Berry v. Wheel-
er, 128 Mo. 84; Johnson-Brinkman Co. v. Railroad, 126
Mo. 344; Bank v. Frame, 112 Mo. 502.   (6) Moreover,
there can be no estoppel where both parties have the
same knowledge or means of knowledge.   De Lashmutt
v. Teetor, 261 Mo. 412; Harrison v. McReynolds, 183 Mo.
533; Spence v. Renfro, 179 Mo. 417; Austin v. Loring,
63 Mo. 19; Bales v. Perry, 51 Mo. 449. (7) Where a con-
tract is unambiguous the courts will enforce it regardless
of any contention that the parties have by their acts given
it a construction different from what it is as it is written.
Meissner v. Ry. Equipment Co., 211 Mo. 112; Wetmore v.
Crouch, 150 Mo. 671; Produce Co. v. Olsen, 188 Mo. App.
181; Laughlin v. Joplin, 161 Mo. App. 161; Bader v. Mill
& Lumber Co., 134 Mo. App. 135.

*Nagel & Kirby* for respondents.

(1) The statute on which alone appellant bases its
claim and contention for double measurement, does not
apply to the facts in the case at bar.   R. S. 1909, sec.
11971.   (2) The contract here does expressly provide
the method in which measurements shall be made, and
also the basis upon which estimates shall be made to de-
termine the amounts of compensation for the various
kinds of work.   (3) Even if the contract were ambiguous
on that point, the parties have by their conduct inter-
preted it contrary to appellant's contentions.   Meissner
v. Ry. Equipment Co., 211 Mo. 112; Knisely v. Leathe,
178 S. W. 458.

WHITE, C.—The defendant Gilsonite Construction
Company had a contract with the Anheuser-Busch Brew-
ing Association to erect a large building on Block 884

in the City of St. Louis. The Gilsonite Construction Company thereupon made a contract with the plaintiff, Webb-Kunze Construction Company, to do all the excavating for the building. After the excavation was finished satisfactorily to all parties, the plaintiff and the defendant Gilsonite Construction Company disagreed as to the method of measuring the work done in making the excavation. Thereupon the plaintiff filed its mechanic's lien and sued the original contractor, Gilsonite Construction Company, and the owner, the Anheuser-Busch Brewing Association. A judgment was rendered in favor of the plaintiff, enforcing its lien in the sum of $2,975.64, and interest. This was in accordance with the defendant's theory of the way the work should be measured. The plaintiff claimed that the judgment should be for the full amount sued for, $19,470.65, in accordance with the plaintiff's method of measurement. The plaintiff then appealed from the judgment.

The only dispute between the parties is as to the method of measuring the work done by the plaintiff. It is not disputed by respondent that if the method which plaintiff employed was correct it is entitled to judgment for the amount sued for, $19,470.65.

I. The difference arises in the application of the statute, Section 11971, Revised Statutes 1909, to the measurement of trenches and pier holes, as follows:

"Sec. 11971. *Whenever measurements* of earthwork, stone masonry work, brickwork, stone-cutting work, plastering work or roofing work is in any case hereafter required to be made *for any purpose,* and *no special agree-* ment *as to the measurements* has been made by the parties, the same shall be made and the quantity thereof ascertained in the following manner and by the following rules: Earthwork—EARTH EXCAVATION SHALL BE MEASURED BY THE CUBIC YARD. To ascertain the number of cubic yards of excavation made, take the length and multiply the same by the width and by the average height; the result will give the number of

<span style="font-variant: small-caps">Agreed Measurements.</span>

cubic feet, which, divided by twenty-seven, will be the amount of cubic yards. For all trenches and pier holes, double measurements shall be allowed. When earth is left in a cellar to protect the adjoining banks or walls, the same may be charged double the amount when required to be removed.''

If the pier holes and trenches excavated by the appellant are given double measurements, as provided in that section, then it is entitled to the full amount sued for. The respondents claimed, and the trial court held, that the plaintiff was not entitled to the double measurements, provided in the section because there was a ''special agreement as to measurements'' as mentioned in the section. That part of the agreement to which the respondent calls attention as to measurements is as follows:

''Article XXI. In consideration of the faithful performance of every provision of this contract, to the satisfaction of Gilsonite Construction Company and the architect, Gilsonite Construction Company will pay to the subcontractor for all of this work and materials in place, under this contract, complete and accepted, the sum of excavation for all trenches including bracing and shoring, $1.15 per cubic yard.

''Excavation north of present railroad tracks forty cents per cubic yard.

''Excavation for pier holes under outside walls and three lines of piers, running east and west from north end of building with necessary bracing and shoring, two dollars per cubic yard.''

It will be observed that the statute has this requirement: ''Earth excavation shall be measured by the cubic yard.'' It then proceeds to provide how a cubic yard shall be determined; the length, breadth and thickness in feet shall be multiplied together and divided by 27 for ordinary excavation; for trenches and pier holes double measurements shall be allowed. That is to say, there shall be twice as many cubic yards in the same number of cubic feet in the excavation of trenches and pier holes

as there are in other excavations. Now that portion of the contract quoted above is not in contradiction of the statute. It only provides the price that shall be paid by the *cubic yard;* $1.15 a cubic yard for trenches and $2 a cubic yard for pier holes; 40c per cubic yard for other excavations. The "cubic yard" mentioned in the contract is controlled by the statute; it is a statutory cubic yard.

The statute necessarily applies to contracts for making earth excavations and must be read as a part of every contract of that character. [Isenhour v. Barton County, 190 Mo. 163, l. c. 173; Reed v. Painter, 129 Mo. 674, l. c. 680; Zellars v. Surety Co., 210 Mo. 86, l. c. 92.] The rates expressed in the contract must be considered in connection with the statute. There is not a word in that part of the contract indicating how the work shall be measured or what shall constitute a cubic yard. It relates only to the price to be paid after the measurement is made. The statute defines what is meant by a cubic yard when applied to trenches and pier holes,—just half the volume of an ordinary cubic yard, and the statute would be without meaning altogether if a cubic yard, in the absence of a special agreement, were measured in any other way.

Appellant, however, invokes a statement in the specifications attached to the contract as indicating a special agreement as to measurements. The contract provides, after setting out the work to be done:

"The whole to be in accordance with the drawings and specifications for the work and in strict accordance with the plans and specifications, drawings and details furnished by Widman & Walsh, and Klipstein & Rathmann, architects, hereafter referred to as architects and engineers, and by the Gilsonite Construction Company. The said plans, specifications, drawings and details in their entirety shall be considered as a part of this contract."

Turning to the specifications which the respondent claims furnished a special agreement as to measurements we find this:

"Proposals for the foregoing work are to be based upon the cubic yard:

"(1) For the trenches for retaining walls.

"(2) For the main body of the excavation, including removing old retaining wall on east side of Broadway and all other old walls or rubbish and loose natural rock which may be encountered.

"Estimates are to be based upon the actual amount of material removed according to surveys taken from time to time, and upon completion of the work, by a competent engineer employed by the owner."

We notice that this provision starts with the proposition that "proposals for the foregoing work are to be *based upon the cubic yard.*" So far, we are in strict accord with the statute; a cubic yard, up to this point, must necessarily be a statutory cubic yard. Then follows immediately "(1) for the trenches for retaining walls." That certainly would be a statutory cubic yard for trenches. Pier holes are not mentioned in that part of the specifications. The concluding paragraph of that provision upon which the respondent laid stress is significant:

"*Estimates* are to be *based* upon the actual amount of material removed, according to surveys taken from time to time; and upon the completion of the work by a competent engineer employed by the owner."

The *proposals* are to be "based upon the cubic yard" —a statutory cubic yard, of course. When *estimates* are made "from time to time" and at the conclusion of the work, these estimates necessarily must be *"based"* upon the actual amount of material removed; else how could they ever arrive at the statutory cubic yard? The actual amount of material removed first must be ascertained in cubic feet, then all estimates are "based" upon that.

Everything required by those provisions of the specifications necessarily arises in the application of the statute. But the significant part of that passage in the specifications is the making of the estimates *"by a competent engineer employed* by the owner." The paragraph

was not put in for the purpose of indicating how measurements should be made, but for the purpose of providing *who* shall make the measurements; so that such measurements shall be under the control of the owner. If it had been intended to provide a "special agreement" for measurements, some language inconsistent with the statute as to what constitutes a cubic yard would have been used. The estimates are for the purpose of making payments, and are made *after* the measurements are furnished. There is no special agreement as to measurements in the specifications.

II.   The respondent, however, asserts that the judgment was right because the parties had construed the contract so that pier holes and trenches were to be measured singly and not as provided in the statute.   The contract required payments to be made in monthly installments of 85 per cent of the work completed in the building, leaving a balance of 15 per cent of all the completed work unpaid, which balance should be paid when the work was entirely completed and delivered.

Interpretation by Parties.

The defendants introduced a number of exhibits showing the estimates and settlements from time to time which they claim shows a construction of the contract according to their theory.   There were several of those introduced in evidence and the following illustrate all:

"Exhibit 'A'

Oct. 2, 1916.

"Gilsonite Const. Co.
     To Webb-Kunze Const. Co., Dr.
     "Excavation on Bevo Plant for A. B. B. Assoc., approximately as follows:

Trench Work, 4,500 Cys. at $1.15 ................$5,175.00
Pit Work, 2,700 Cys. at .40 ..................... 1,080.00
Moving Heman's shovel on job, labor ............. 71.05

$6,326.05"

Construction Co. v. Gilsonite Construction Co.

"Exhibit 'B'

Oct. 20, 1916.

"Gilsonite Const. Co.,
    To Webb-Kunze Const. Co.
"Approximate yardage on trench work for
October: 2,000 Cys. at $1.15 .....................$2,300.00
Less 15% ...............................\....  345.00

                                 $1,955.00"

"Exhibit 'C'

Nov. 1, 1916.

"Gilsonite Construction Co., Dr.
    To Webb-Kunze Const. Co.
"Approximate yardage on Bevo Plant to date:
Trench work, 10,203 cu. yds. at $1.15 cu. yd. ..$11,733.45
Pit work, 2,700 cu. yds. at 40c cu. yd. .......... 1,080.00
Pier holes on 7th St., 160 cu. yds. at $2.00 cu. yd.  320.00

                                  .$13,133.45
          Less previous estimate .............. 8,528.95

                               $ 4,604.50
"Extras - on Pay Roll, week ending Oct. 19 $119.10
Extras on Pay Roll, week ending Oct. 26  192.92

                                 312.02

                               $ 4,916.52"

"Exhibit 'D'

Nov. 24, 1916.

"Gilsonite Const. Co.,
    To Webb-Kunze Const. Co.
"Approximate yards of trench excavates from Nov 1st
    to Nov. 24, 1916.
On  7th  Street  130  ft.  trench 1430 cu. yds.
On Arsenal & Bway. 90 ft. trench  990 cu. yds.

                 2420 cu. yds. at $1.15
                     $2,783.00"

It will be noticed in each of these statements there was an estimated payment upon the number of cubic yards. The abbreviation in Exhibit A, "Cys." doubtless means cubic yards, as does the word "yardage"' in Exhibit B, and the expression "cu. yds." in Exhibit C. There is nothing in these statements to indicate that "cubic yards" means anything else than statutory cubic yards. There is nothing in any dimensions given in

those exhibits which would indicate that the amount of material taken out was in excess of what the statute provides. In "Exhibit D" the length of one trench, and perhaps the width of another, is given, but that is the only dimension. In one of the exhibits (not copied above) two dimensions of some pier holes are given, but in none are three dimensions given. The exact amount of earth removed in cubic feet cannot be determined; nor is there any evidence that the measurements were made and 27 cubic feet allowed for the cubic yards mentioned in these estimates.

Another provision of the contract is important also in considering the effect of settlements, even if the evidence had been more direct in support of respondent's theory. The contract has the following provision:

"Article XXVI. No payment made for work under this contract except the final payment, shall be conclusive evidence of the performance of this contract either wholly or in part, and no payment shall be construed to mean an acceptance of defective work or improper materials."

While that provision is to the effect that no payment shall be conclusive evidence as to *performance,* performance would necessarily involve interpretation of the contract, and it may well be doubted whether the exhibits offered were competent evidence, even if they tended to show what appellant claims.

It is true that the interpretation and construction which the parties themselves place upon a contract will be adopted by the court where the contract is ambiguous. That is, where the terms of the contract are reasonably susceptible of different constructions. [Meissner v. Ry. Equipment Co., 211 Mo. l. c. 133; Produce Co. v. Olsen, 188 Mo. App. 191; Laughlin v. Joplin, 161 Mo. App. 167.] The evidence offered does not in any way tend to show a construction of the contract different from its terms as indicated above.

The judgment is reversed and the cause remanded with directions to the trial court to enter judgment in

accordance with the prayer of the petition. *Railey* and *Mozley, CC.*, concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.