**POLSTER v. O'HANLON.**

No. 28868.

St. Louis Court of Appeals.

Missouri.

April 20, 1954.

Joseph A. Kirkwood, St. Louis, for appellant.

Walther, Hecker, Walther & Barnard, George W. Cloyd, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is a negligence action wherein plaintiff, Armin H. Polster, sought to recover for damage to his automobile, which damage was alleged to have resulted from a collision between said automobile while being operated by plaintiff, and an automobile owned and - operated by defendant, Arthur J. O'Hanlon. Defendant filed a counterclaim for damage to his automobile. The trial resulted in a verdict and judgment for defendant on plaintiff's cause of action, and for plaintiff on defendant's counterclaim. From said judgment, plaintiff has appealed.

The collision occurred on Southwest Avenue in the City of St. Louis at about 7:00 p. m. on November 5, 1951. Southwest Avenue runs in a northeasterly and southwesterly direction. Just prior to the accident plaintiff was proceeding southwestwardly as defendant approached from the southwest. There was a heavy snow falling at the time and there were patches of ice on the street. The accident happened on a viaduct over which Southwest Avenue crosses, about a block southwest of Kingshighway, a north and south street.

Plaintiff came to a stop at a stop light at Kingshighway. He was at the head of the traffic there and, when the light changed, his was the first car to cross Kingshighway. He then proceeded southwestwardly at a speed of fifteen or twenty miles per hour. There were no cars ahead or alongside of him, but several thirty to forty feet to his rear. Southwest Avenue at that point is a four-lane highway, about forty feet wide, with a black line down the center. Plaintiff proceeded about five feet to the right of the center line. When he reached the viaduct he noticed that the street was "very glittery", which indicated to him the presence of ice. Plaintiff testified:

"I did slow down somewhat when I came to almost the center, as far as the length of the viaduct is concerned. * * * there was a car, driven by the defendant, going east, and when he was about between eight or ten feet from being abreast of my car—in other words, when his front bumper and my front bumper were about eight to ten feet apart, his car suddenly swerved into my left fender, hitting it diagnally. Then my car, I am quite certain, did not move more than three or four feet after that, because there was quite a force pushing it back."

Plaintiff further testified that defendant's car continued and came to a stop in the south traffic lane, about forty-five or fifty feet from the point of impact, with its front facing toward the north. Plaintiff further testified that his car, when it stopped, was north of the center line and turned slightly toward the north. He stated that defendant's speed just prior to the collision was between thirty and thirty-five miles per hour. He further testified:

"I saw the car suddenly skid, and my first reflex was to touch the brake and, of course, it happened in a matter of seconds; my foot came to the brake at approximately the same time my car was struck and I attempted—I began to turn a little bit to the right * * * but, I had no time to even make that turn. I know that when the car was stopped, my wheels were turned slightly toward the right."

On cross-examination, plaintiff testified:

"Q. * * * What distance separated the cars when it first started to the left? A. Ten to twelve feet, as far as width was concerned, and about the same distance as far as length was concerned."

Defendant testified that on the occasion in question he was traveling northeastwardly at about twenty-five miles per hour. He stated that there were patches of ice on the viaduct, and that when he passed the "hump" in the center of the viaduct he took his foot off the accelerator, and:

"the car turned and it turned partially across the middle lane, so that my car was probably, oh, on half of that, possibly, and my car came to a rest, and I looked over my right shoulder and traffic was coming from the other way, and my car was at a dead standstill, and it seemed to me there was possibly fifty feet before the car, driven by Mr. Polster, hit my car. * * * it (the motor) had died in the meantime. I didn't use my brake, and my foot was off the clutch, and it automat-

ically died out. * *. * I kind of froze there. I couldn't do anything; but I did see him coming. * * * He never seemed to make any attempt to stop * * *. He didn't swerve at all. * * *

"Q. And I believe Mr. Polster testified this morning that your car had gotten about five feet across the center line. Would that be approximately your estimate? A. Possibly five, seven, something like that; that's about right."

Defendant further testified that plaintiff's car came to rest about forty feet from the point of impact and on the north side of the street. Defendant's car spun around and came to rest some distance east of the point of impact.

Stanley Paulsen, a repairman, testified that the damage to defendant's car was on its right side toward the front end. Plaintiff testified that he paid $592.68 to have his car repaired. He also testified that the value of his car before the accident was $1600, and $1008 after the accident.

Appellant first complains of Instruction No. 7, given at the request of defendant. By said instruction the jury were advised that, with respect to plaintiff's cause of action, the burden of proof was upon the plaintiff to prove his case by the preponderance or greater weight of the credible evidence. The term "preponderance of evidence" was then defined. No complaint is made as to the form of the instruction; nor is it claimed that it announced an erroneous principle of law. The only complaint is that it unduly emphasized plaintiff's burden when read in connection with Instruction No. 4.

Instruction No. 4 was a burden of proof instruction, and was given at plaintiff's request. By it the jury were instructed as to the burden of proof on the issues, both as to plaintiff's cause of action and defendant's counterclaim.

■ It appears from the record that plaintiff's motion for new trial contained

no assignment of error, either general or specific, with reference to Instruction No. 7. For that reason, plaintiff's complaint, made for the first time in this court, should not be considered. See Supreme Court Rule 3.23, 42 V.A.M.S. But, even if properly preserved, the point made is without merit.

■ The giving of an instruction on the burden of proof which is a repetition of an instruction previously given is a matter which rests within the discretion of the trial court, which will not be interfered with, absent a clear abuse of such discretion, as where the repetition so unduly emphasizes the subject as to mislead, confuse, or impress the jury with the view that the court has serious doubt that the complaining party has met his burden. No such situation is presented by the record in this case. See Mueller v. Schien, 352 Mo. 180, 176 S.W.2d 449; State ex rel. Kansas City v. Shain, Mo.Sup., 177 S.W.2d 511; Ostmann v. Ostmann, Mo.Sup., 183 S.W.2d 133; Mendenhall v. Neyer, 347 Mo. 881, 149 S.W.2d 366.

■ Appellant next complains of Instruction No. 5, given at defendant's request. This instruction submitted contributory negligence based upon plaintiff's failure to swerve to the right after he saw or could have seen defendant in a position of peril. It is urged that the instruction was erroneous because there was no evidence in the record as to whether the street to the right of plaintiff's car was free and clear so that plaintiff could have swerved to the right. There is no merit to this contention.

The street in question was forty feet wide. Plaintiff was traveling from three to five feet north of the center line. He testified that there were no cars abreast of him as he proceeded from Kingshighway to the place of collision, and that the nearest cars to him on his side of the street were thirty or forty feet to the rear. According to the testimony of defendant his car skidded in front of plaintiff's car and stopped about five to seven feet across the

center line of the street when plaintiff's car was about fifty feet away.

From the foregoing evidence, the jury could have reasonably found that there was ample space available between the two cars and the north side of the street within which to have swerved and to have avoided the collision.

One of the facts hypothesized in Instruction No. 5 was that defendant's car came to a stop, and by reason thereof was in a position of danger of collision. Defendant says that said requirement was improper because such finding could have no support in the credible evidence. In support of this contention it is urged that for the jury to find that defendant's car was stopped prior to the collision they would have to find that a car traveling twenty-five miles per hour on a street covered with ice came to a stop within approximately ten feet, without the application of brakes, which finding would be contrary to common observation and experience.

It appears from defendant's testimony that his car came to a stop five to seven feet north of the center line of the street. This is the distance the car moved north after it started to skid. The record is not clear as to how far the car moved toward the east, which was the normal course for it to follow while it was also skidding to the north. The speed of the car was being reduced before the skid started by reason of defendant taking his foot off the accelerator. The street was not wholly covered with ice—the evidence showing that the ice was in patches. It must also be taken into consideration that there was additional traction on the wheels of defendant's car as it started sliding sideways. Defendant's testimony as to speeds and distances was mere estimates and not conclusive upon him. We cannot say, as a matter of law, that the testimony was unbelievable and of no probative force.

Among the instructions offered by defendant was Instruction No. 6, which directed a verdict on defendant's counterclaim. It authorized a recovery predicated

upon plaintiff's negligent failure to swerve after he saw or could have seen defendant in a position of danger. After hypothesizing the facts necessary to a recovery under such theory, the instruction concluded with the words "then your verdict shall be against plaintiff and in favor of defendant on defendant's counterclaim."

The record shows that the court started to read this instruction and read through the words "against plaintiff" (appearing in the concluding sentence), then stopped reading and engaged in a colloquy with counsel at the bench, without the hearing of the jury. The reading of this instruction was never concluded, nor was the same handed to the jury. The court did, however, give and read to the jury Instruction No. 9, which was identical with Instruction No. 6 except that the words "directly and proximately caused" were substituted for the words "directly contributed", which appeared in Instruction No. 6.

In effect, what the court did, was to modify Instruction No. 6 and give it to the jury under another number. Plaintiff at the time voiced no objection to this procedure, and made no request that the jury disregard that part of Instruction No. 6 which had been read. However, there appears in the record a general objection to the giving of Instruction No. 6.

Instruction No. 6, minus the direction to find for defendant on his counterclaim, did nothing more than submit the issue of plaintiff's contributory negligence as a defense to plaintiff's cause of action. This issue was also submitted by defendant's Instruction No. 5, and for that reason it is urged by appellant that said issue was unduly emphasized to his prejudice. We cannot concur in this view. As heretofore stated, the matter of repetition in instructions is not ordinarily reversible error. We fail to see how appellant was, under the circumstances, prejudiced by this second charge of contributory negligence.

Appellant's next point is that the reading of Instruction No. 6 constituted the giving of an oral instruction, contrary to the re-

quirements of Section 510.300 RSMo 1949, V.A.M.S.

■ Defendant's motion for new trial contained no general assignment of error with respect to the giving or reading of Instruction No. 6. Said motion did contain a number of specific assignments with reference to this instruction, but the one now urged was not included. For that reason, we must hold that the point now urged has not been preserved for review. Block v. Rackers, Mo.Sup., 256 S.W.2d 760.

The next seven assignments under appellant's points relied upon are directed to the action of the trial court in permitting defense counsel, over plaintiff's objection, on cross-examination of plaintiff, to elicit evidence as to a conversation between plaintiff and defendant immediately after the accident, which conversation disclosed that plaintiff carried a $50 deductible collision insurance policy.

The matter complained of arose in the following manner: While plaintiff was on the stand his counsel inquired of plaintiff if he had any conversation with the defendant after the accident. Plaintiff replied: "I asked Mr. O'Hanlon what happened, and he said, 'Well, I just skidded and lost control of my car. I am sorry.' And I, of course, told him my car was not very old, and I hadn't had it too long, and he, then, told me that he would do what he could, and he would in small installments try to pay me at least $50."

After this answer was given, counsel objected and moved for a mistrial on the ground that the testimony showed that defendant's alleged statement was an offer of compromise and, for that reason, the evidence was inadmissible. The court overruled the objection and motion. Thereafter, when it came time for defendant's counsel to cross-examine plaintiff, the following took place:

"Q. Mr. Polster, when you had this conversation with Mr. O'Hanlon, following the accident, what sum was it he is alleged to have agreed to pay

you? A. He said he would try to send $50 at least.

"Q. How was that sum arrived at?

\* \* \* \* \* \*

"Mr. Kirkwood: Well, Your Honor, I object to any questions about how the sum was arrived at. \* \* \* Defense counsel is attempting to show that there was discussion about insurance, which is improper before the jury.

"Mr. Cloyd: Your Honor, it is very well material here since that was the very basis on which this conversation took place; that was the thing that invited the offer. Now, they have shown half of it. I think I am entitled to show all the circumstances.

\* \* \* \* \* \*

"Mr. Kirkwood: We didn't mention insurance at all. \* \* \* This was simply an admission against interest.

"The Court: But, you kind of opened it up on your direct examination.

"Mr. Kirkwood: Not insurance, Your Honor. \* \* \* it would be highly prejudicial.

"The Court: Well, it may be that it is improper, but when you have opened it up, I don't see how I can shut it off.

"Mr. Kirkwood: We didn't open it up.

"The Court: Yes, I am afraid you did.

"The Witness: Will you repeat the question, please?

"Q. How was that sum of $50 arrived at?

"Mr. Kirkwood: I object to the question, Your Honor, for the purpose of the record.

"The Court: Overruled.

"A. I asked Mr. O'Hanlon if he had insurance. He said he did not. He asked me whether I had collision insurance. I said I had $50 deductible. So, I told him that the accident would cost me at least $50, regardless of what happened, unless he paid the damages. He told me, then, that he would try to send me at least that $50."

■ The court did not err in its ruling with respect to the admission of the foregoing evidence. Plaintiff opened up the subject by introducing part of the conversation, upon the theory that defendant had at the time admitted his fault in connection with the accident. This gave defendant the right to insist upon bringing in the other portion of the conversation tending to rebut the damaging effect of the portion theretofore offered. And this is so even though evidence otherwise objectionable is brought into the case. Dunn v. Alton R. Co., Mo.App., 88 S.W.2d 224. The evidence brought out by defendant did afford a basis for an inference inconsistent with that sought to be established by plaintiff's testimony on direct examination.

Taken with the case was respondent's motion to dismiss for appellant's failure to comply with the rules. Said motion is overruled.

Finding no error in the record, the judgment is affirmed.

BENNICK, J., and HOLMAN, Special Judge, concur.