The GRAPETTE COMPANY, a corporation, Plaintiff-Respondent,

v.

GRAPETTE BOTTLING COMPANY, a corporation, J. M. Johnston and Nelle J. Johnston, Defendants-Appellants.

No. 7383.

Springfield Court of Appeals.

Missouri.

Jan. 11, 1956.

Neale, Newman, Bradshaw, Freeman & Neale, F. B. Freeman, Donald J. Hoy, Springfield, for defendants-appellants.

Warren M. Turner, Louren G. Davidson, Howard C. Potter, Springfield, for plaintiff-respondent.

STONE, Judge.

In this jury-waived action at law, defendants appeal from a judgment of $5,753.58 entered on a note dated December 9, 1950. Admitting execution and delivery of the note, defendants complain because the trial court refused to credit on the note $2,503.32 held by plaintiff in a so-called "point of purchase advertising account" (hereinafter sometimes referred to as the advertising account).

By a written "Bottlers License Agreement" dated July 1, 1947 (hereinafter referred to as the license agreement), plaintiff herein, The Grapette Company, an Arkansas corporation with its principal place of business in Camden, Arkansas, licensed one of the defendants herein, Grapette Bottling Company, a Missouri corporation with its principal place of business in Springfield (hereinafter sometimes referred to as the defendant company), to bottle and distribute within a described territory a beverage under plaintiff's trade name of "Grapette." In the license agreement, plaintiff agreed, among other things, "to furnish units of Grapette at a price of $273 f. o. b. shipping point * * * said unit to consist of 60 gallons Grapette syrup (and) 200 gross Grapette crowns" and also "to furnish advertising in adequate amounts to thoroughly service the territory, as determined by Licensor (plaintiff)," while defendant company agreed, among other things, to "manufacture" Grapette by mixing "Grapette syrup with dextrose, pure cane or bottler's beet sugar and water" in accordance with a stated formula.

The uncontradicted testimony of plaintiff's district manager and advertising director (called as *defendants'* witnesses) was that, whenever defendant company bought a "unit of Grapette," it was charged "with the whole price" of $273, and that, of the $273 paid by defendant company for each such "unit," plaintiff voluntarily set aside a portion (the exact amount thus set aside

having been changed by plaintiff from time to time) in a so-called "point of purchase advertising account" which was "set up for the territory to advertise the product." Plaintiff made payments from the advertising account for such items as calendars, book matches, motel carriers, menu boards and freight, and on certain occasions the advertising account was charged with "a pro rata share" of other expenditures by plaintiff such as those for national advertising. On April 25, 1949, $493.96 was paid on defendant company's "syrup account" (for "units of Grapette") by a charge in that amount against the advertising account; but, on the same date, defendant J. M. Johnston, president of defendant company, wrote plaintiff "that I will not in the future ask that any credit be given me on my syrup account and charged to my advertising account" and "that the advertising department of The Grapette Company will in the future, without interference from me, handle my advertising account." Under examination by his own counsel, defendant J. M. Johnston agreed that the note, on which plaintiff sues, reflected a "settling up" of then existing obligations; and, the record clearly shows that, from and after December 9, 1950, the date of execution of the note, no payment on defendant company's "syrup account" or on the note was made by charge against the advertising account. Although "various things," such as the cost of trademarked bottles or cases, occasionally had been charged against similar "point of purchase advertising accounts" set up for other territories, the witnesses produced by defendants stated emphatically that *plaintiff* determined and controlled not only what portion of the "unit" sale price of $273 would be set aside in each such advertising account but also what items would be paid therefrom.

Defendants' primary contention on this appeal is that "the trial court erred in finding as a fact that a contractual relationship (under the license agreement) still existed between the parties." It is by no means clear that the trial court's refusal to credit the balance in the advertising account on the note was predicated *solely* upon any such "finding." For, in the same informal and voluntary remarks, the court had pointed out that the $2,503.32 "accumulated in the advertising account is ear-marked for a certain purpose, and there isn't any agreement that that fund, * * * or any part of it, is to be used in the payment of indebtedness"; and, in similar vein, the court had stated pointedly during the trial that "the plaintiff has a contract in black and white, by which the defendants agree to pay so much money" and "so far there isn't any showing, at all, as to any agreement binding on the plaintiff company that whatever was in that point of purchase advertising account belongs to (defendants)."

■ However, assuming that (as defendants say) "the basis of the trial court's ruling * * * was the finding * * * that there was still a contractual relationship between the parties," there was no request for a finding of facts in the instant case; and, *even if* the court's voluntary comments were treated as "a brief opinion containing a statement of the grounds for its decision" [Section 510.310(2), RSMo 1949, V.A.M.S.], they would neither be binding on us nor affect the character of our appellate review, which must be upon both the law and the evidence as in actions of an equitable nature. Fort Osage Drainage District of Jackson County v. Jackson County, Mo., 275 S.W.2d 326, 328(2); Faire v. Burke, 363 Mo. 562, 252 S.W.2d 289, 290(1); Pudiwitr v. Soloman, Mo. App., 224 S.W.2d 562, 567(2, 3).

■ Furthermore, defendants are in no position to urge on appeal that such "finding" was erroneous as *"clearly in conflict with certain judicial admissions of the plaintiff,"* for no such allegation of error was presented to or expressly decided by the trial court. Section 512.160(1), RSMo 1949, V.A.M.S.; Supreme Court Rule 3.23. In their motion for new trial, defendants elected to aver with particularity that "the judgment should be amended to allow de-

fendants credit for * * * $2,503.32 * * * *for the reason that the plaintiffs* (sic) *did and have served notice of cancellation of their franchise with defendants so that the legal relationship* and cause for the existence of said (advertising) account *has -ceased to exist*"—a "reason" utterly devoid of support in the record. The fundamental and time-honored principle of appellate procedure that a trial court must be afforded an opportunity to review and correct its own errors before the aid of an appellate court may be invoked [State ex rel. Morton v. Cave, 359 Mo. 72, 220 S.W. 2d 45, 49(4); Banner Iron Works v. Ray R. Rosemond Co., Mo., 107 S.W.2d 1068, 1070(4); Olson v. Olson, Mo.App., 184 S.W.2d 768, 772(3); Fruit Supply Co. v. Chicago, B. & Q. R. Co., Mo.App., 119 S.W.2d 1010, 1011(4); Tucker v. Burford, Mo.App., 95 S.W.2d 866, 867(5)] forbids our consideration of the alleged error in the "finding * * * that a contractual relationship still existed between the parties," here urged for a reason radically different from, and wholly unrelated to, that specifically averred in the motion for new trial. Noble v. Missouri Ins. Co., Mo. App., 204 S.W.2d 446, 450(12); Anth v. Lehman, Mo.App., 144 S.W.2d 190, 192(2). Consult also Nickels v. Witschner, Mo., 270 S.W.2d 848, 849(2); Block v. Rackers, Mo., 256 S.W.2d 760, 763(3); Romandel v. Kansas City Public Service Co., Mo., 254 S.W.2d 585, 594-595(24, 25); Sterrett v. Metropolitan St. Ry. Co., 225 Mo. 99, 123 S.W. 877, 879(1); Polster v. O'Hanlon, Mo.App., 267 S.W.2d 381, 385(4); Mitchell v. Russell, Mo.App., 170 S.W.2d 137, 138 (2).

▇ Nevertheless considering defendants' contentions to determine whether "manifest injustice or miscarriage of justice has resulted" from "(p)lain errors affecting substantial rights" [Supreme Court Rule 3.27], we note that the "judicial admissions of the plaintiff," with which the court's "finding * * * that a contractual relationship still existed between the parties" is said to be "clearly in conflict," were in the *second* count of plaintiff's amended petition, in which appointment of a receiver for defendant company originally was sought. However, the transcript on appeal contains a stipulation that this second count was dismissed by plaintiff and that trial was had on the ·first count, an action in conventional form to recover on a promissory note. Upon its dismissal, the second count became an abandoned pleading and dropped out of the case; and, not having been offered in evidence, the abandoned second count is not now appropriately before this court and may not be considered by us. Cf. Weir v. Brune, Mo., 256 S.W. 2d 810, 811(2); Lightfoot v. Jennings, 363 Mo. 878, 254 S.W.2d 596, 597(3); Von Eime v. Fuchs, 320 Mo. 746, 8 S.W.2d 824, 826(4); State ex rel. Fechtling v. Rose, 239 Mo.App. 178, 189 S.W.2d 425, 428(3).

As mystifying and meaningless to us as to defendants is the linguistic mumbo jumbo of their lay witnesses, plaintiff's district manager and advertising director, who, steadfastly asserting plaintiff's complete and continuing control over the advertising account, nevertheless said that plaintiff did not claim the advertising account as its money but that such account, "set up like a trust fund," "belongs to the territory." However, we are not here concerned with interpretation or reconciliation of the puzzling and paradoxical answers of plaintiff's employees (called as defendants' witnesses); and, the legal frailty of defendants' position is indicated by the fact that neither their brief nor the oral argument of their counsel has disclosed the theory on which they seek credit for the advertising fund. Frankly conceding that their claim is not bottomed on any writing, defendants assert in their brief that their "rights * * * can be sustained on any number of theories," "the most apparent" of which "would be that there was a simple debtor-creditor relation between the parties, the money being paid in advance by the defendant (company), conditioned on the furnishing of advertising and other services by the plaintiff." But, although plaintiff undertook "to furnish advertising in adequate amounts to thoroughly service

the territory, *as determined by Licensor* (*plaintiff*)," this was no part of each "unit of Grapette" defined as consisting of 60 gallons of Grapette syrup and 200 gross of Grapette crowns, for which defendant company was required by the license agreement to pay unconditionally "$273 f. o. b. shipping point, net, no discount." On the record before us we are unable to perceive how or why a debtor-creditor relationship should arise with respect to whatever portion of the sale price of $273 per "unit" plaintiff, after receipt thereof, might have set aside voluntarily in an advertising account to implement performance of its contractual obligation to furnish advertising; and, we are strengthened in our conclusion that no such debtor-creditor relationship actually arose by the fact that defendants' counsel readily agreed in oral argument that defendant company would have had no right to have demanded that payment for additional "units of Grapette" be made by charges against the advertising account.

 The only other theory mentioned by defendants is that the loose references to the advertising account as being "like a trust fund" lead "to the legal conclusion *by way of analogy* that since the 'trust' had become 'dry,' the equitable title of the defendant company became a legal one." However, defendants' counsel studiously avoid open reliance on "the trust fund theory," perhaps because of the fact that such theory, being an affirmative defense in this suit on a note, i. e., a defense resting on facts not necessary to support plaintiff's case [cf. Grauf v. City of Salem, Mo. App., 283 S.W.2d 14, 18, and cases there cited], would not be available to defendants since it was not pleaded in their answer. Section 509.090, RSMo 1949, V.A.M.S. Consult Farley v. Farley, Mo.App., 181 S.W.2d 671, 673–674(3, 5); Frank v. Myers, 232 Mo.App. 681, 109 S.W.2d 54, 57(3); Sevier v. Harmon, Mo.App., 261 S.W. 348(2); Tuepker v. Sovereign Camp, W.O.W., Mo.App., 226 S.W. 1002, 1007(8). As under prior codes [cf. Conrad v. Diehl, 344 Mo. 811, 129 S.W.2d 870, 872(2);

Kleinlein v. Foskin, 321 Mo. 887, 13 S.W. 2d 648, 654(4); Christian v. Connecticut Mut. Life Ins. Co., 143 Mo. 460, 45 S.W. 268, 270(6); Currier v. Lowe, 32 Mo. 203; Morrison v. Painter, Mo.App., 170 S.W.2d 965, 971(14)], "the pleadings continue to be of the greatest utility in defining the issues of a case" tried under our present code. Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S.W.2d 25, 28; Hilderbrand v. Anderson, Mo.App., 270 S.W.2d 406, 409. Consult also Linders v. Linders, 356 Mo. 852, 204 S.W.2d 229, 230(2); Williams v. City of Illmo, Mo.App., 279 S.W.2d 196, 201; Smith v. Githens, Mo.App., 271 S.W. 2d 374, 381(23). We conclude that defendants are not entitled, under any theory suggested by them, to credit on the note in suit for the amount of the advertising account.

Defendants' only other complaint on appeal, i. e., that "the court erred in refusing to admit evidence of the course of conduct of the parties relative to the advertising fund," relates to refusal of defendants' offer to prove by Mrs. Sherman Reid, who had been employed by defendant company *from 1941 to the Spring of 1947,* that "the company would actually draw checks against this advertising account and just deliver the checks to her, which would be * * * put in their general bank account for operating expenses." But, we think that such evidence could not have been germane or relevant to any issue properly presented upon trial. For, Mrs. Reid's employment was during a period prior to July 1, 1947, when defendant company bottled Grapette under a different license agreement (not, however, offered in evidence), and her employment terminated not only more than three and one-half years prior to December 9, 1950, the date of execution of the note in suit, but also prior to execution of the license agreement dated July 1, 1947. And, defendant J. M. Johnston testified that the $2,503.32 in the advertising account, for which defendants seek credit on the note in suit, "represents * * * the credit we had built up, about, since the time of that note."

Defendants assert the admissibility of the proffered testimony of Mrs. Reid as indicative of the intention of the parties and as reflecting their "practical interpretation" of the license agreement dated July 1, 1947. The construction of a contract as evidenced by the acts or declarations of the parties may be considered by the courts "where the language of the contract is ambiguous, or there is a reasonable doubt as to its meaning, but not where it is plain and unambiguous." Scotten v. Metropolitan Life Ins. Co., 336 Mo. 724, 81 S.W.2d 313, 315(4); Howard v. Aetna Life Ins. Co., 350 Mo. 17, 164 S.W.2d 360, 366(3); State ex rel. Northwestern Mut. Life Ins. Co. v. Bland, 354 Mo. 391, 189 S.W.2d 542, 549(21), 161 A.L.R. 423. See also Campbell v. Webb, 356 Mo. 466, 202 S.W.2d 35, 39(4); Meissner v. Standard Ry. Equipment Co., 211 Mo. 112, 109 S.W. 730, 736 (13, 14); Ward v. Kurn, 234 Mo.App. 241, 132 S.W.2d 245, 253(7); Southern Surety Co. v. Goltra, Mo.App., 9 S.W.2d 661, 663 (6); Laughlin v. City of Joplin, 161 Mo. App. 161, 142 S.W. 786, 788(2). "When the language of a contract is plain, there can be no construction because there is nothing to construe." Mickelberry's Food Products Co. v. Haeussermann, Mo., 247 S.W.2d 731, 738(5), and cases there cited. With no suggestion in the instant case that the language of either the note in suit or the license agreement is ambiguous, i. e., that either instrument is reasonably susceptible of different constructions [J. E. Blank, Inc., v. Lennox Land Co., 351 Mo. 932, 174 S.W.2d 862, 868(8); Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 267 (3); State ex rel. National Life Ins. Co. v. Allen, 301 Mo. 631, 256 S.W. 737, 739 (3); Webb-Kunze Const. Co. v. Gilsonite Const. Co., 281 Mo. 629, 220 S.W. 857, 860], there obviously is no basis for invocation or application of the doctrine of contemporaneous construction as evidenced by conduct of the parties.

Furthermore, whatever the course of conduct of the parties might have been *prior to execution of the license agreement dated July 1, 1947,* evidence thereof would have been inadmissible in the case at bar for the additional reason that, absent any allegation of fraud, accident or mistake, all antecedent or simultaneous understandings between the parties were merged in the license agreement, a written contract apparently full and complete. Phoenix Mut. Life Ins. Co. v. Goessling, Mo.App., 121 S.W.2d 182, 185(3); Shaffner v. Moore Shoe Co., Mo.App., 35 S.W.2d 935, 937(2); Harrington v. F. W. Brockman Commission Co., 107 Mo.App. 418, 81 S.W. 629, 630(2). Certainly, the license agreement did not, on its face, show that it was incomplete [Koons v. St. Louis Car Co., 203 Mo. 227, 101 S.W. 49, 57(2); Edwards v. Sittner, Mo.App., 213 S.W.2d 652, 656(6)], and we cannot say that it was incomplete simply because it was silent as to the advertising account, which, as we have noted, was created voluntarily by plaintiff from its own funds. Consult Poe v. Illinois Cent. R. Co., 339 Mo. 1025, 99 S.W.2d 82, 89(6, 7); Sol Abrahams & Son Const. Co. v. Osterholm, Mo.App., 136 S.W.2d 86, 92(2). We are satisfied that the trial court did not err in refusing defendants' offer to prove by Mrs. Reid a course of conduct between the parties prior to termination of her employment in the Spring of 1947.

The judgment should be and is affirmed.

McDOWELL, P. J., and RUARK, J., concur.