M. D. LIGHTFOOT, Appellant, v. ORVILLE E. JENNINGS, Respondent, No. 42982—254 S. W. (2d) 596.

Division Two, January 9, 1953.

Rehearing Denied, February 9, 1953.

*Hosmer & Newberry* for appellant.

*Wear & Wear, Sam M. Wear* and *William A. Wear* for respondent.

BARRETT, C.—This is an action for actual and punitive damages for slander and libel. There are three counts in the plaintiff's second amended petition, two for slander and one for libel. The defendant filed a motion to dismiss all three counts of the petition for failure to state a cause of action. The trial court sustained the motion as to counts one and two and the plaintiff has appealed. The defendant has filed a motion to dismiss the plaintiff's appeal as premature for the reasons that count three of the second amended petition and count four of the first amended petition have not been disposed of, hence there is not a final appealable judgment.

880

■ Unquestionably, it is the general rule that for the purposes of an appeal a judgment must be a final judgment and to be final the judgment must dispose of all parties and all issues in the case and failing in this respect an appeal is premature and subject to dismissal. V.A.M.S., Sec. 512.020; Supreme Court Rule 3.24; Deeds v. Foster, (Mo.) 235 S. W. (2) 262; Graham v. Bottorff, (Mo. App.) 240 S. W. (2d) 191; Shoush v. Truitt, (Mo. App.) 235 S. W. (2) 859. But the general rule is not applicable to the record and circumstances of this appeal. When the plaintiff filed his second amended petition he abandoned the allegations of his former petitions, including count four of the first amended petition, and even though the former petitions are included in the transcript upon this appeal they are not now appropriately before this court. New First National Bank v. C. L. Rhodes Produce Co., (Mo. App.) 37 S. W. (2) 986; Wood v. Wells, (Mo.) 270 S. W. 332; Spotts v. Spotts, 331 Mo. 917, 55 S. W. (2) 977. Consequently, for appellate purposes and finality of judgment, count four has been disposed of. As to count three of the petition involved upon this appeal, the defendant has entered into a stipulation which recites that through inadvertence on the part of the reporter the original transcript is incomplete. The court entered a judgment of dismissal as to counts one and two and the court also entered this judgment: "It is further ordered by the Court that a separate trial be had on Count Three in this cause." The record does not reveal the court's reasons for ordering a separate trial of count three, except for the fact that it is for libel, they all involve the same parties and, more or less, common questions of law and fact (Brush v. Harkins, 9 F. R. D. 604; 1 Carr, Civil Procedure, Sec. 795), but the defendant does not claim that the trial court abused its discretion in ordering a separate trial of count three. Bedser v. Horton Motor Lines, 122 F. (2) 406. There is no claim of an abuse of discretion and under the civil code the court was authorized to order the separate trial. V.A.M.S., Secs. 510.180, 511.040, 507.050; Supreme Court Rule 3.29. And, a separate trial having been ordered as to count three, the judgment of dismissal as to counts one and two was a final appealable judgment (Harper v. St. Joseph Lead Co., 361 Mo. 129, 233 S. W. (2) 835) and the question for review is whether those counts state claims upon which relief can be granted, that is whether they state causes of action for slander. There is no allegation or claim of special damages and. [598] the precise question as to both counts is whether the language relied upon is defamatory and slanderous per se.

■ In the first count the plaintiff alleges that a public meeting was held in one of the court rooms in the Greene County Courthouse. In the course of the meeting the defendant stated that "M. D. Lightfoot was paid by private utility money to defeat the bond issue" at a special election. Whereupon, it is alleged, the plaintiff presented a

complete list of contributors to campaign funds to be used against the bond issue and "read such list to the meeting in detail and thereupon plaintiff asked if a notary public was in the crowd and one John McKinney, a then commissioned notary public within and for the County of Greene, State of Missouri, arose and at plaintiff's instigation and suggestion, said John McKinney, a notary public, swore plaintiff under oath administered by said notary public that said statements were true and correct and further that 'other than two one-dollar bills mailed anonymously years ago' " plaintiff was never paid one cent by anyone. After this episode it is alleged the defendant uttered the following slander: "M. D. Lightfoot is slick enough to cover it up—no sworn statement can change the truth. I still say private utility money was used." The basis of the claim that the language is slanderous per se is this allegation "meaning and intending to mean and being understood by those present to mean that private utility money was used by plaintiff in the aforesaid bond election and that the *plaintiff had sworn falsely, said charge of false swearing being a crime under the law of the State of Missouri.*"

The appellant contends that the language complained of imputes to him the crime of making a false affidavit, a crime punishable by imprisonment, even though a misdemeanor, and is therefore slanderous per se. It may be conceded, if in the stated circumstances the language complained of imputes to the plaintiff the crime of making a false affidavit, that he has stated a cause of action for slander, even though there is no allegation or claim of special damages. Vaughn v. May, (Mo. App.) 274 S. W. 969; Tincher v. National Life & Accident Ins. Co., (Mo. App.) 146 S. W. (2) 663; Boyce v. Wheeler, (Mo. App.) 195 S. W. 84. "Words charging a person with having sworn falsely in reference to an affidavit have also been held actionable when involving criminal responsibility." 33 Am. Jur., Sec. 32, p. 58. The Missouri Statute with reference to making a false affidavit is this: "Every person who shall willfully, corruptly and falsely, before any officer authorized to administer oaths, under oath or affirmation, voluntarily make any false certificate, affidavit or statement of any nature, for any purpose, shall be deemed guilty of a misdemeanor, and shall upon conviction be punished by imprisonment in the county jail not less than six months, or by fine not less than five hundred dollars." Mo. R. S. 1949, Sec. 557.070. In connection with the statute and the allegations of the petition it is also assumed, for the purposes of this opinion, that the notary was authorized to perform the functions of his office in the unusual circumstances alleged in the petition. State v. Boland, 12 Mo. App. 74; 66 C. J. S., Sec. 6(c)(2), p. 615. It will be noted, however, that there is no allegation in the petition from which it is a possible inference that the plaintiff made an *affidavit*. He alleges that he read the list of contributors to the audience and that the notary "swore the plaintiff under oath

administered by said Notary Public that said statements were true and correct * * *.'' Even the plaintiff does not claim that he made an *affidavit* and the defendant's language that "no sworn statement can change the truth" is not a charge that he did make a false *affidavit*. An *affidavit* is a "sworn statement in writing." 2 C. J. S., Sec. 10, p. 932; Webster's New International Dictionary. The statute with reference to false affidavits, Sec. 557.070, "covers only the case of something *in writing,* as for instance, an affidavit, which is a written oath; and a statement under the ejusdem generis rule * * * must also be in writing." State [599] v. Carpenter, 164 Mo. 588, 594, 65 S. W. 255. The language relied upon, in the circumstances, does not impute to the plaintiff the crime of making a false affidavit and is therefore not slanderous per se, and the trial court did not err in dismissing count one of the petition for failure to state a cause of action. Mahan v. Berry, 5 Mo. 21; Ward v. Clark, 2 Johns. (N.Y.) 10; Casselman v. Winship, 3 Dak. 292, 19 N. W. 412.

■ In count two of the petition it is alleged, at the same meeting, the defendant said, " 'I have called a meeting for this room next week. Then I will make some serious charges against M. D. Lightfoot and invite him to be present as I am curious to know what he will say about them.' " The meeting was held on August 9th, 1949, and, after the meeting, the plaintiff was talking to a group of persons and the defendant approached and in the presence of approximately one hundred persons said, " 'you are not going to talk here you damned communist.' " It is then alleged that the words were defamatory and slanderous "Meaning and intending to mean and being understood by those present to mean that plaintiff was a member of the Communist Party and advocated, abetted, advised, taught or encouraged the duty, necessity, desirability or propriety of overthrowing or destroying the Government of the United States by force or violence, a crime under the laws of the United States." It is urged that the pleaded language and innuendoes impute to the plaintiff the crime of advocating the overthrow of the government of the United States by force (18 U.S.C.A., Sec. 2385), a felony (Mo. R. S. A., Sec. 559.400), and is, therefore, slanderous per se.

As a general rule the imputation of political principles or practices objectionable to the average person in the community has been recognized as defamatory and actionable per se. Annotations 51 A. L. R. 1071; 171 A. L. R. 709. "Whether language has that tendency (that is, whether it is defamatory and actionable without proof of special damages) depends, among other factors, upon the temper of the times, the current of contemporary public opinion, with the result that words, harmless in one age, in one community, may be highly damaging to reputation at another time or in a different place." Mencher v. Chesley, 297 N. Y. 94, 100, 75 N. E. (2) 257. The cases, almost unanimously, have held it to be libelous per se to

charge a person with being a Communist, particularly when the language relied upon is an unequivocal allegation of fact which the plaintiff stamps as false. Annotation 171 A. L. R., l.c. 710; Utah State Farm Bureau F. v. National Farmers Union Service Corp., 198 F. (2) 20; Grant v. Reader's Digest Ass'n., 151 F. (2) 733; Ward v. League For Justice, (Ohio A.) 93 N. E. (2) 723; Gallagher v. Chavalas, 48 Cal. A. (2) 52, 119 P. (2) 408. There have been some cases to the contrary, even in libel, (McAndrew v. Scranton Republican Pub. Co., 364 Pa. 504, 72 Atl. (2) 780) and, at least two recent cases have held that it was not slanderous per se to orally charge that a person is a Communist. Pecyk v. Semoncheck, (Ohio A.) 105 N. E. (2) 61; Keefe v. O'Brien, (N. Y.) 116 N. Y. S. (2) 286. It is not necessary to a determination of this appeal to consider the rationale of those cases (See "Democracy and Defamation," Riesman, 42 Col. L. R. 1282) because the courts in those cases do not appear to have been confronted with the claim that the imputation of one's being a Communist is a charge of a felony and therefore slanderous per se.

In this jurisdiction oral words imputing or charging the commission of a crime amounting to a felony are defamatory and actionable per se (Starnes v. St. Joseph Ry., L. H. & P. Co., 331 Mo. 44, 52 S. W. (2) 852; Mo. R. S., Sec. 559.400) and it is likewise slanderous per se to utter words charging or imputing the commission of a crime under the laws of another jurisdiction, in this case the laws of the United States, (18 U.S.C.A., Sec. 2385). Bundy v. Hart, 46 Mo. 460; 53 C. J. S., Sec. 53(d), p. 106. Von Gerichten v. Seitz, 87 N. Y. S. 968, is peculiarly in point in determining whether this petition states a [600] cause of action. There the charge was "you (the plaintiff meaning) are an anarchist." In holding that the complaint stated a cause of action the court said. "If it be true that there is a distinction between criminal anarchy and anarchy which is not condemned by law, then the charge, standing by itself, would be insufficient to sustain an action for slander; but with the innuendo that this charge was intended to and did in fact, charge that the plaintiff was an advocate of the principles of anarchy, namely, the doctrine 'that organized government should be overthrown by force and violence,' then it seems, the charge has been made out. And while the plaintiff, by the addition of innuendo, could not change the meaning of the words beyond their fair or plain meaning, yet, if this was the fair meaning and intent of the words, he has made out a case. It is not the believing alone in the principles of anarchy which would condemn the plaintiff, for no mere belief, however dangerous, can be the subject of criminal prosecution; but the advocacy of criminal anarchy —that is, advising or advocating the overturning by violence of organized government—is condemned by law, and can be made the basis of a criminal prosecution. Nor can we say that the fair meaning of the words is not such as to warrant one in believing that it was

intended to charge that the plaintiff advocated criminal anarchy. It may be that upon a trial it can be shown that the words were not intended to be taken in their broadest sense, but, for the purposes of the demurrer, it must be assumed that the allegations of the complaint are true, and the words, being capable of the construction contended for by the plaintiff, cannot be limited by us to their more innocent interpretation. We think the complaint stated a cause of action, and the demurrer should have been overruled.'' So it is as to count two, as against a mere motion to dismiss, the petition states a cause of action.

The motion to dismiss the appeal is overruled, and, for the reasons noted, the judgment is affirmed as to count one and reversed and remanded as to count two. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.