**Lydia ADAMS, individually and as a representative of a class composed of herself and others, Plaintiff,**

v.

**LEDERLE LABORATORIES, et al., Defendants.**

No. 83–0226–CV–W–0.

United States District Court, W.D. Missouri, W.D.

April 29, 1983.

Roger Guy Burnett, Sevier & Burnett, Timothy H. Bosler, Liberty, Mo., for plaintiff.

W. Russell Welsh, Sarah W. Hays, Douglas S. Laird, Gage & Tucker, Kansas City, Mo., for Bristol Labs.

Joseph A. Sherman, Jackson & Sherman, P.C., Kansas City, Mo., for Pfizer, Inc.

John W. Cowden, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, Mo., for The Upjohn Co.

Charles Christian Kirley, C. Brooks Wood, Jackson, Dillard, Brouillette, Weisenfels, Phillips & Wood, P.C., Kansas City, Mo., for A.H. Robins Co.

Paul E. Vardeman, Polsinelli, White, Schulte & Vardeman, Kansas City, Mo. and Timothy A. Harr, Covington & Burling, Washington, D.C., for Glaxo, Inc.

Thomas E. Deacy, Jr., Patrick C. Cena, Dale L. Beckerman, Deacy & Deacy, Kansas City, Mo., for SmithKline Beckman Corp.

Thomas O. Baker, Thomas N. Sterchi, Baker & Sterchi, Kansas City, Mo., for E.R. Squibb & Sons, Inc.

Jack G. Beamer, Lee E. Wells, Merrick, Beamer, Wells & Slagg, Kansas City, Mo., for Parke-Davis.

John M. Kilroy, Sr., Thomas F. Fisher, Shughart, Thomson & Kilroy, Kansas City, Mo., for Lederle Laboratories.

Neal E. Millert, Larry J. Tyrl, James, Millert, Houdek, Tyrl & Sommers, Kansas City, Mo., for Reid-Provident Labs (Tutag).

Thomas K. Riden, Riden, Watson & Goldstein, P.A., St. Petersburg, Fla., Thomas A. Sweeny, Popham, Conway, Sweeny, Fremont & Bundschu, Kansas City, Mo., for Saron Pharmacol Corp.

Curtis E. Woods, Gail M. Schroeger, Spencer, Fane, Britt & Browne, Kansas City, Mo., for Elder Pharmaceuticals.

John Harl Campbell, Campbell & Bysfield, Kansas City, Mo., for Ulmer Pharmacal.

William R. Fish, Knipmeyer, McCann, Fish & Smith, Kansas City, Mo., for Dart Industries.

Fred Wilkins, Stephen B. Millin, Jr., Wilkins & Millin, P.C., Kansas City, Mo., for Lannett Co., Inc.

Michael J. Gallagher, Wassberg, Gallagher & Jones, Kansas City, Mo., for Mayrand, Inc.

Michael J. Gallagher, Wassberg, Gallagher & Jones, Kansas City, Mo., for Rowell Labs, Inc.

## ORDER ON MOTION TO REMAND

ROSS T. ROBERTS, District Judge.

This is a products liability case, presently pending as a class action, in which plaintiff Lydia Adams, individually and as representative of the class, seeks damages for personal injuries allegedly resulting from administration of the drug tetracycline.[1] The cause was initially filed in the Circuit Court of

Clay County, Missouri, and subsequently removed to this Court. The matter comes before me now on plaintiff's motion to remand.

A brief background summary will suffice. Plaintiff's original petition was filed in the state court on February 10, 1983. On the same day, pursuant to plaintiff's motion but prior to service of process and without other notice to any defendant, the state court certified a class action under Rule 52.08, Missouri Rules of Court. The class was to consist of "all of those persons [residing in certain counties in Western and Northwestern Missouri] who have been administered prenatally during the last half of pregnancy or postnatally during the first ten (10) years of life the drug commonly known as tetracycline and its derivatives and who have suffered discoloration of or structural deterioration of the teeth and other similar damage." On February 15, 1983, still prior to service upon any defendant and without other notice, the state court granted plaintiff's motion to "expand" the class by adding residents of certain other Northwestern Missouri counties.

On February 16, 1983, plaintiff filed a First Amended Petition in the state court. Pursuant to Rule 55.33(a), Missouri Rules of Court, that amended petition was filed "as a matter of course" (i.e. without the necessity of court approval) since, as alleged therein, it was filed prior to service of the original petition upon any of the defendants. So far as I can determine from a careful reading of both petitions, the only differences between the two are in the fact that the amended petition fails to name one of the 20 defendants which were named in the original petition (Breipohl Drug Co.) and gives a changed name for several others,[2] and in the fact that in some instances the amended petition lists the name and

---

**1.** Ten other tetracycline cases, including one other class action, have been filed in or removed to this Court, and have been consolidated in this Division.

**2.** "Bristol-Meyers Co."/"Bristol Laboratories" and "Meyer Laboratories, Inc.;" "Pfizer, Inc."/"Pfiphamers, Division Pfizer, Inc.;"

"Reid-Provident Laboratories, Inc., a/k/a Tutag Direct"/"Tutag Direct, Division Reid-Provident Laboratories;" "Physicians & Hospitals Supply Co."/"Ulmer Pharmacal Co., Division Physicians & Hospitals Supply Co.;" and "Dart Industries, Inc., Formerly Doing Business As: Rexall Drug Co."/"Rexall Drug Co."

address of a specific person to be served on behalf of a defendant rather than simply listing an address for the defendant. All these changes appear in the captions of the two petitions; the bodies of the two are identical. None of the defendants are mentioned by name in the body of either petition.

According to the averments of the removal petition, which I accept as true since plaintiff has taken no issue with them in the following respects, *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97–8, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921); *Quick Erectors, Inc. v. Seattle Bronze Corp.,* 524 F.Supp. 351, 354 (E.D.Mo.1981), on February 17, 1983, defendant Bristol Meyers filed a motion in the Clay County Circuit Court requesting that court to set aside its class certification orders of February 10 and 15. Although Bristol Meyers had not yet been served in the action (such service occurred on February 24, 1983), it had learned of the matter by means of an article appearing in the Kansas City Star newspaper on February 16, 1983. The motion was denied by the court and on the same day Bristol Meyers filed a petition for mandamus in the Missouri Court of Appeals, Western District, seeking an order requiring the Clay County Circuit Court to vacate its class certification orders of February 10 and 15. Still on that same day the Court of Appeals issued what is commonly known as a "stop order," prohibiting the Clay County Circuit Court from taking further action in the matter until final decision by the Court of Appeals after briefing and argument.

There matters stood until February 28, 1983, when defendants Bristol Meyers and Pfizer filed their verified petition for removal to this Court, accompanied by the necessary bond and notice to plaintiffs. See 28 U.S.C. § 1446. In the eleven day interim, apparently, the removing defendants ascertained that there was in fact complete diversity of citizenship between the plaintiff and all viable named defendants, since plaintiff was a citizen of Missouri and since all defendants named in the amended petition, save one, were citizens of other states, and since the sole defendant which

constituted an exception (Metro Med Incorporated) was in fact a defunct corporation whose corporate charter had been forfeited by the Missouri Secretary of State on January 1, 1980. The removal petition recited these facts with respect to diversity of citizenship, and further recited that none of the other defendants had yet been served.

As events subsequently unfolded, the removing defendants' belief that none of the other defendants had been served prior to filing the removal petition proved to be in error. In fact eight defendants (including Bristol Meyers and Pfizer) had been served by that point in time (see Appendix I). The confusion on the subject arose from the fact that the Clerk of the Clay County Circuit Court had delivered the summons for each defendant to counsel for plaintiff (apparently in conformity with local custom and practice), and counsel had requested that the serving officials send their returns directly to him rather than to the Clerk. Those returns were not filed by plaintiff's counsel until March 25, 1983, and accordingly when counsel for Bristol Meyers and Pfizer inquired of the Clerk on February 28 they were advised that no return on service had been made with respect to any of the defendants.

Of the six non-removing defendants which had been served as of February 28, 1983, none filed a consent to the removal within 30 days of such service, although two (Dart Industries and Physicians & Hospitals Supply Co.) did file a consent within 30 days after the removal petition itself was filed. The remaining four defendants which had been served as of February 28, 1983 (Rowell Laboratories, Mayrand, Inc., Glaxo, Inc., and Saron Pharmaceutical Corp.) did not file a consent to removal within 30 days of either the date of service upon them or the date the removal petition was filed, although all have now done so (see Appendix I). According to the affidavits submitted in connection with the present motion, however, all defendants which had been served by the time the removal petition was filed did join therein

within 30 days of learning that diversity of citizenship existed.

The motion to remand raises three issues: (a) whether Breipohl Drug Co., a Missouri corporation which was named as a defendant in the original petition but not in the amended petition, should be considered as a defendant in the case at the time the removal petition was filed; (b) whether all necessary consents to removal were timely filed; and (c) whether Bristol Meyers and Pfizer waived their right to remove by participating to the extent mentioned in the state court proceedings. Those issues will be dealt with seriatim.

## A.

### STATUS OF BREIPOHL DRUG CO.

Breipohl Drug Co. was named as a defendant in plaintiff's original petition. It was not named in the amended petition upon which removal was made. Plaintiff asserts that Breipohl's omission from the amended petition was inadvertent and argues that, in any event, an order of the Clay County Circuit Court was necessary before Breipohl could be dismissed from the case. Defendants respond with the suggestion that it is the fact of Breipohl's omission which is important, rather than the reasons therefor, and that a court order "dismissing" Breipohl was unnecessary. The point is critical since Breipohl is a domiciliary Missouri corporation, the presence of which would not only destroy diversity and hence defendants' only basis for removal, but would also violate the additional diversity removal requirement that none of the defendants be a citizen of the state in which the action is brought, regardless of the place of plaintiff's citizenship. See 14 Wright, Miller and Cooper *Federal Practice And Procedure* § 3723 (1976).

Two matters may be noted at the outset. First, removability is determined from the record as of the time the petition for removal is filed. 14 Wright, Miller and Cooper, *supra.* Second, although federal rather than state law generally controls in respect of whether the elements of removal

jurisdiction have been satisfied, *Chicago, Rock Island & Pacific Railroad Company v. Stude,* 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317 (1954); 14 Wright, Miller and Cooper, *supra* at § 3721, in the present instance it would appear that Missouri law must be taken as governing whether Breipohl was or was not actually a party to the state court action at the time defendants' removal petition was filed. *See, e.g., Kaplan v. Missouri Pac. R. Co.,* 629 F.2d 337, 338 (5th Cir.1980); *First National Bank in Little Rock v. Johnson & Johnson,* 455 F.Supp. 361, 363 (E.D.Ark.1978).

The essence of plaintiff's position is that since Breipohl was named as a defendant in plaintiff's original petition it could not cease to be a defendant, even though omitted from the amended petition, absent an order of court dismissing it from the case. In support of that position plaintiff relies upon Missouri Court Rule 52.08(e), which is a verbatim copy of Rule 23(e), Fed.R.Civ.P., and Missouri Court Rule 52.06, which is a verbatim copy of Rule 21, Fed.R.Civ.P. Defendants counter with the suggestion that the situation is instead controlled by Missouri Court Rule 55.33(a), which is a verbatim copy of Rule 15(a), Fed.R.Civ.P. Before reaching these points, however, I feel it may be helpful to focus upon the effect which attends the filing of an amended petition.

Missouri law has long held that by filing an amended petition which is complete in itself (as plaintiff's amended petition is), a plaintiff *abandons* his former petition and all matters not restated in the amended petition. *Wichmann v. United Disposal, Inc.,* 553 F.2d 1104, 1106 (8th Cir. 1977); *Hutchins v. Priddy,* 103 F.Supp. 601, 604–07 (W.D.Mo.1953); *Laux v. Motor Carriers Council of St. Louis, Inc.,* 499 S.W.2d 805, 809 (Mo.1973); *Weir v. Brune,* 256 S.W.2d 810, 811 (Mo.1953); *Lightfoot v. Jennings,* 363 Mo. 878, 254 S.W.2d 596, 597 (1953); *Simmons v. Friday,* 359 Mo. 812, 224 S.W.2d 90, 93 (1949); *New First Nat. Bank v. C.L. Rhoades Produce Co.,* 332 Mo. 163, 58 S.W.2d 742, 744 (1932). The same rule has been recognized with respect to federal

pleadings. *See Buck v. New York Central Railroad,* 275 F.2d 292, 293 (7th Cir.1960). All this being so, I have considerable conceptual difficulty understanding how a defendant who is wholly omitted from an amended petition can be said to remain in the case, any more so than would a claim against him which is omitted. As to the latter, see *Wichmann v. United Disposal, Inc., supra.* In theory the original petition has ceased to exist—has evaporated, as it were—*as a vehicle by which any relief can be granted to plaintiff.*[3] See generally *Hutchins v. Priddy, supra.* If that is so, how might a valid judgment be rendered as to the omitted defendant? To the contrary in fact, the rule is that "[a] judgment against a defendant concerning whom no allegations are made in the declaration or complaint, or against whom no relief or judgment is sought, ordinarily is unauthorized." 49 C.J.S. *Judgments* § 51, at 1203 (1947).

In these circumstances, and since the right to remove on the basis of diversity of citizenship must be determined solely from the allegations in the complaint at the time of removal, *Hughes Const. Co., Inc. v. Rheem Mfg. Co.,* 487 F.Supp. 345, 348 (N.D. Miss.1980), there is a temptation to conclude that I need not be concerned with the state of any pleading prior to the amended petition, or who might previously have been named as parties in the action, or by what right, if any, plaintiff filed that amended petition. The simple fact of the matter is that Breipohl is *not* named as a defendant in the petition which reaches me, and that such petition is a pleading which plaintiff herself has voluntarily filed.

▮ In order to be sure the matter is adequately dealt with, however, particularly since the parties themselves have concentrated their briefing efforts elsewhere, I now turn to the parties' arguments concerning the impact of Missouri Rules 52.06, 52.-08(e) and 55.33(a) upon the situation. In doing so, and in excluding for the moment any consideration of the class action aspects of this matter, I note that the potential conflict between Missouri Rules 52.06[4] and 55.33(a),[5] while not directly addressed by any Missouri decision, is precisely the same apparent conflict which exists between the counterpart federal rules (Rules 21 and 15, Fed.R.Civ.P.). There, although some federal district court cases have held that Rule 21 controls with respect to any dismissal of a party, thus requiring an order of court, 6 Wright And Miller, *Federal Practice and Procedure* § 1479 (1971), the more persuasive cases hold that, when applicable (that is, prior to the time a responsive pleading has been filed), the first sentence of Rule 15(a) governs with respect to *all* amendments of the complaint, whether in adding or dropping parties or otherwise. Accordingly, under the federal rules the addition or dropping of parties, if accomplished by an amendment (or a new complaint) which is filed within the time frame covered by Rule 15(a), does *not* require an order of court. *McLellan v. Mississippi*

---

**3.** "Abandoned" pleadings may of course be used as admissions against the party which authored them, *Jimenez v. Broadway Motors, Inc.,* 445 S.W.2d 315, 317 (Mo.1969), a point which tends to illuminate the fact that the same are no longer considered pleadings in the case, since active pleadings may not be introduced in evidence. *Id.*

**4.** Rule 52.06 reads as follows:
"Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or if its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."

**5.** Rule 55.33(a) reads as follows:

"(a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend at any time within 20 days after it is served. Otherwise, a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."

*Power Co.,* 526 F.2d 870, 872–73 (5th Cir. 1976), *mod. on other grounds,* 545 F.2d 919 (5th Cir.1977) (en banc); 6 *Wright And Miller, supra.*

 It is my firm belief that the Missouri courts would reach the same conclusion with respect to Missouri Rules 52.06 and 55.33(a). Plaintiff cites language from *MA Electric Power Cooperative v. True,* 480 S.W.2d 310, 314 (Spr.Ct.App.1972), as suggesting a contrary result, but I note that the court in that case was not concerned with an amendment to the petition at all, much less one which was filed under the auspices of Rule 55.33(a).[6] I find, instead, that the decision in *State ex rel Blond v. Stubbs,* 485 S.W.2d 152, 155–57 (K.C.Ct. App.1972), provides a much better insight into how the Missouri courts would deal with the question. In that case the court was concerned with the scope of Rule 52.06. In an extensive and well reasoned opinion, which relied to a considerable extent upon the background for and interpretations of Federal Rule 21, the court held that Rule 21 (and accordingly Missouri Rule 52.06) was actually intended as nothing more than a mechanism for dealing with misjoinder problems arising under Federal Rule 20 (Missouri Rule 52.05), and that its area of application was limited thereto. In other words, neither Federal Rule 21 nor Missouri Rule 52.06 is truly a rule of general application, in the sense contended for by plaintiff here; they are instead rules designed to function solely with respect to misjoinder problems—as, indeed, the title to each rule rather plainly suggests. Given that fact, as well as the Missouri courts' long standing position with respect to the effects of an amended petition, I have little difficulty holding that the Missouri courts would find decisions such as *McLellan v. Mississippi Power Co., supra,* wholly agreeable, and would arrive at the same result.

As noted, plaintiff also contends that Missouri Rule 52.08(e) would have operated to prevent any dismissal of Breipohl without court order. That rule is a duplicate of Federal Rule 23(e), both of which state, inter alia, that "[a] class action shall not be dismissed or compromised without the approval of the court. . . ." Even though there has obviously been no dismissal of the "class action" here, Federal Rule 23(e) has been construed—as would presumably Missouri Rule 52.08(e)—to apply even to the dismissal of an individual defendant from the class action, see 3B *Moore's Federal Practice* ¶ 23.80[2.–1], at 23–508 (2d Ed. 1982); and plaintiff's argument might accordingly have some merit, *if* Breipohl was an appropriate defendant as concerns the class action aspects of this matter. Clearly, however, it was not.

Plaintiff's amended petition (as with her original petition) undertakes to plead claims both on her individual behalf and on behalf of the class. Those claims are predicated upon what have come to be known as the "alternative liability" or "enterprise liability" theories of recovery. See *Sindell v. Abbott Laboratories,* 26 Cal.3d 588, 163 Cal. Rptr. 132, 607 P.2d 924, 933–35, 936–38 (1980). Under those theories, plaintiff and the class members would not be required to identify any particular defendant which manufactured the tetracycline they received; instead, some ("alternative liability") or all ("enterprise liability") of those who manufactured the drug are named as defendants, with any judgment being apportioned between them in relation to their proportionate share of the tetracycline market during the relevant time period. See *Sindell v. Abbott Laboratories, supra.* Thus plaintiff alleges, in paragraphs 14. and 15. of her amended petition:

> "14. That Defendants engaged in a joint enterprise or concerted action among themselves and with all drug companies which produced the drug generically known as tetracycline and each gave substantial assistance to the other in accomplishing the tortious result herein and the Defendants herein, by and through their

---

**6.** The question presented in *True,* rather, was whether two defendant mortgagees in a land condemnation case remained party defendants after they had "disclaimed" their interests in the land.

independent conduct, upon information and belief, knew of and assisted the other drug companies in the manufacture, promotion and distribution of the drug generically known as tetracycline and further in inhibiting the dissemination of information to the general public and to the medical profession as to the adverse sequelae of the drug tetracycline. Such joint enterprise and concerted action was and is a proximate cause of injury to Plaintiffs as members of the class.

15. The Defendants jointly manufactured a substantial share of the market of tetracycline. Each Defendant is liable for any proportion of any judgment rendered represented by its share of the market for tetracycline. Each Defendant's conduct in the sale of tetracycline to the general public and to the medical profession was and is a proximate cause of injury to the Plaintiffs as members of the class."

I note that each of the three Counts of the petition incorporates and realleges these paragraphs, and that those three Counts themselves are simply alternative pleadings of strict liability, failure to warn, and negligence on the part of the defendants.

Whether the Missouri courts would accept either such theory as a viable basis for recovery is an open question. Even where one or the other theory has been accepted, however, there has been no suggestion that they can be applied against anyone other than the manufacturers of a product. See *Sindell v. Abbott Laboratories, supra.* And with the sole exception of Breipohl, that is the apparent position of all the defendants plaintiff has sued here. As the unrebutted affidavit submitted by Breipohl's owner demonstrates, however, Breipohl has never manufactured any tetracycline at all; it is, instead, a drug store located on the town square in Liberty, Missouri.

Plaintiff's position is that at least some of *her* prescriptions for tetracycline were filled at Breipohl's, and that she was entitled to join Breipohl as a defendant on that basis. I have no quarrel with that general theory, but by the same token it is obvious that

such a claim would be one individual to plaintiff, in which the class itself—consisting of all tetracycline-affected persons located in eight Missouri counties (which include the metropolitan Kansas City area)—would have no general interest. Since presumably Rule 52.08(e), like Rule 23(e), is designed simply to protect the rights of absentee or nonparty class members in connection with *class claims,* and accordingly has no application to the settlement or dismissal of *individual claims* in a class action, *In re General Motors Engine Interchange Lit.,* 594 F.2d 1106, 1138–39 (7th Cir.1979); *Weight Watchers of Philadelphia, Inc. v. Weight Watchers International,* 455 F.2d 770, 773 (2d Cir.1972); *Rodgers v. United States Steel Corp.,* 70 F.R.D. 639, 642 (W.D. Pa.1976); 3B *Moore's Federal Practice* ¶ 23.80[2], at 23–504, I can find nothing in the rule which might have required a court order before Breipohl could be dismissed from the case. In these circumstances the situation would appear again to have been controlled by Missouri Rule 55.33(a).

I conclude, accordingly, that there is nothing in Missouri law which might have operated to prevent plaintiff from filing her amended petition, without court order, even though the same had the effect of dropping or dismissing a previously named defendant. To the contrary, I find that Missouri Court Rule 55.33(a) expressly permits that procedure, under the facts which existed here. Breipohl Drug Co. was thus not a defendant in the case at the time defendants' removal petition was filed, and need not be considered in connection with the diversity aspects of this matter.

## B.

### TIMELINESS OF REMOVAL PETITION AND CONSENTS THERETO

Plaintiff urges that the petition to remove must be considered untimely, since not all defendants which had been served by the time of its filing had joined therein within the 30 day period provided for in 28 U.S.C. § 1446(b). For the reasons stated below, I believe that argument must be rejected.

■ There are certain general principles which may be helpful to note before proceeding to the merits of the parties' arguments. First, while section 1446 is generally construed to mean that in multiple defendant cases all defendants are to be treated collectively, and must join in a petition to remove, 14 *Wright, Miller And Cooper, supra* § 3731, that requirement does not include non-domiciliary defendants who have not yet been served at the time the removal petition is filed. *Id.* Thus such defendants may be ignored. *Id.* Second, while it is often stated that all served defendants must "join" in the petition for removal, it is clear that it is unnecessary that each actually execute the petition; all that is required is that each defendant give consent to removal within the necessary time frame. *Colin K. v. Schmidt,* 528 F.Supp. 355, 358–59 (D.R.I.1981); *Border City S & L Ass'n v. Kennecorp Mtg.,* 523 F.Supp. 190, 192 (S.D.Ohio 1981); *Albonetti v. GAF Corporation—Chemical Group,* 520 F.Supp. 825, 826–28 (S.D.Tex.1981). And finally, although not often directly addressed in the cases, it would seem clear that the necessary 30 day time frame must be calculated separately for each defendant. Thus, for example, in cases falling under the first paragraph of section 1446(b), *each* defendant served prior to the time a removal petition is filed has 30 days after service was made upon *him* within which to join in or consent to that removal. See *Quick Erectors, Inc. v. Seattle Bronze Corp., supra* at 354; *Albonetti v. GAF Corporation—Chemical Group, supra* at n. 1.

■ Plaintiff urges that the present record establishes that six defendants failed to join in or consent to the removal petition within 30 days after service of plaintiff's petition upon them. That is clearly correct, as a review of Appendix I will demonstrate. But that argument is predicated upon the theory that the *first* paragraph of section 1446(b) is controlling here. Defendants suggest, to the contrary, that since plaintiff's petition did not disclose upon its face a basis for removal, the *second* paragraph of section 1446(b) must govern, and that all defendants which had been served at the time the removal petition was filed did in fact file their consent within 30 days after receiving information from which they could determine that the matter was removable. I believe defendants' point is well-taken.

The second paragraph of section 1446(b) reads as follows:

"If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

Cases construing this language in relation to the present sort of factual situation have been divergent, to say the least. Those cases are collected and analyzed in Judge King's excellent opinion in *Kaneshiro v. North Am. Co. For Life & Health,* 496 F.Supp. 452 (D.Haw.1980), and I can do no better than to quote both his statement of the problem and his resolution of it:

"While it may be tempting to suppose that there are only two logical possibilities, that is, that a case is either removable or not removable, and that the first paragraph of § 1446(b) covers the former and the second paragraph the latter, it is evident that such is not the situation. Rather, there are actually three possibilities. The case on the initial pleadings may be removable on its face, or indeterminate in the sense that it does not on its face supply sufficient information to determine whether or not it is removable. The third possibility exists because the criteria determining removability are not necessarily required of or relevant to the plaintiff's state court complaint. Where the defendant's petition for removal is based on diversity, it must contain in its 'statement of the facts which entitle [the defendant] ... to removal' the citizenship of the parties, a necessary jurisdictional fact in federal

court, but a fact irrelevant to jurisdiction in the state court.

The question then becomes which paragraph of § 1446(b) is applicable to that third category of cases in which the initial pleading does not on its face provide the necessary information for removal. If one reads the second paragraph's opening proviso—'[i]f the case stated by the initial pleading is not removable, . . . .'— to mean "[i]f the initial pleading does not set out the required elements of a removable case, . . . .", then the second paragraph of § 1446(b) seemingly would apply. However, if the second paragraph is applied to the third category of indeterminate cases, the following problem arises. The progression of the plaintiff's state court case generally will provide no impetus for the plaintiff to state jurisdictional facts relevant only to jurisdiction in federal court. Is the defendant then entitled to sit on his right to remove until such time as he deems it provident to discover from the plaintiff the requisite jurisdictional facts and remove the case to federal court? If the defendant discovers that the case is in fact not removable, the plaintiff is not prejudiced, but if the defendant discovers that the case is removable on the facts underlying the complaint, he has been afforded an egregious opportunity to delay and to squander both judicial resources and the resources of his adversary. Thus it is those third category cases that are indeterminate on their face but actually removable on their underlying facts that are problematic. The case before this Court is such a case."

\* \* \* \* \* \*

"Although the decisions cited above are by no means in agreement, there appears to be a line of support for placing on the defendant desiring removal the burden of scrutinizing the plaintiff's initial pleading, even if it is indeterminate on its face, and of removing within 30 days, at least unless the initial pleading provides 'no

clue' that the case is actually removable. . . . Thus, the second paragraph of § 1446(b) is not applicable to indeterminate pleadings, unless they provide 'no clue' to the fact that the case is actually removable. This analysis eliminates the possibility of prejudicial delay caused by removing defendants and promotes judicial economy."

*Id.* at 456–57, 460. Since "the manifest purpose of starting the period of removal from the date of the service of the 'initial pleading' is to enable the defendant to intelligently ascertain removability from the face of such initial pleading, . . . ." *Ardison v. Villa,* 248 F.2d 226, 227 (10th Cir. 1957), I find Judge King's reasoning and analysis sensible, and adopt them here.

■ In *Kaneshiro,* the complaint upon which removal was taken alleged that plaintiff was a "resident" of the State of Hawaii. Defendant argued that this was not tantamount to Hawaiian "citizenship" as required for federal diversity purposes, see *Fisher v. United Airlines, Inc.,* 218 F.Supp. 223 (S.D.N.Y.1963), and that the period for removal thus did not commence until the facts regarding plaintiff's citizenship had been ascertained. Judge King rejected that argument, holding that the averments concerning plaintiff's "residence" provided at least "a clue" respecting citizenship which defendant was obliged to act upon within 30 days from the date of service. In the present case, however, plaintiff's amended petition (and her original petition for that matter) provided not even a "clue" as to the state of citizenship of the various defendants. The only information given as to any defendant, aside from the defendant's name, is the address designated for service of process. I would not ordinarily take the latter information as pertinent at all in this connection, since an appropriate place for service of process—at least for a corporation—will often have nothing at all to do with where its state of incorporation may be or where it maintains its principal place of business.[7] To the con-

---

7. For example, nine of the defendants had apparently designated C.T. Corporations Systems, at "314 N. Broadway, St. Louis, Missouri 63102" as agent for service of process. That

trary in fact, if the petition's mere designation of a place for service of process were interpreted as providing some "clue" to the citizenship of the defendants in this case, that "clue" would incorrectly have suggested that at least one was a viable Missouri domiciliary.[8] It is true, of course, that a defendant can be expected to know its own place of citizenship, *Keller v. Carr,* 534 F.Supp. 100, 102 (W.D.Ark.1981), but that obviously does not mean that each defendant automatically knows the citizenship of each other defendant. In these circumstances I hold, as defendants urge, that the second paragraph of section 1446(b) rather than the first must govern.

■ Plaintiff seems to take the position that the second paragraph of section 1446(b) cannot be applicable here because the present petition for removal was in fact filed within 30 days of service upon defendants Bristol Meyers and Pfizer. I find no merit in that contention. Acceptance of such a proposition would lead to the anomalous result that a defendant which first learned, on the 29th day following service, of a basis for removal not disclosed on the face of plaintiff's complaint would have only one day left to file its removal petition, while if it learned of the matter on the 31st day following service it would have a full 30 days in which to file. There is nothing in the language of the statute which suggests such a result, and there is no case of which I am aware supporting it.

■ In addition, plaintiff also suggests that any application of the second paragraph of § 1446(b) must be predicated upon some "voluntary act" by her, and that defendants' independent discovery of a basis for removal is not such an act. As Judge King pointed out in *Kaneshiro, supra* at 458 n. 17, however, such an argument in connec-

tion with the present sort of problem mistakes the issue. The rule to which plaintiff alludes derives from *Northern Railway Company v. Alexander,* 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918), and holds that a case which was originally (that is, at the time of service upon a defendant) non-removable can become removable only by some voluntary act on the part of the plaintiff which changes its status and makes it so. 1A *Moore's Federal Practice* ¶ 0.168[3.–5–6], at 597. The issue here, however, is not whether an originally non-removable case has subsequently become removable, but instead whether an originally removable case was shown on the face of the petition to be so. If not, and if that fact is to function as a basis for invoking the second paragraph of § 1446(b) at all, then the matter obviously cannot be made to turn upon some "voluntary act" by plaintiff which reveals removability. See *Kaneshiro v. North Am. Co. For Life & Health, supra.*

The present situation does, however, present a problem I do not find clearly addressed in any yet decided case. Where the second paragraph of § 1446(b) controls and there are multiple defendants, with some defendants receiving the necessary information as to diversity of citizenship at different times, how is the time frame for the filing of and consent to a removal petition to be calculated?

Assuming for the moment that the general theories and procedures applied here should parallel as closely as practicable those attending application of the first paragraph of § 1446(b)—and I can see no good reason for refusing to follow that principle—two answers may be suggested. First, it is possible to suggest that the petition for removal must be filed within 30 days of the date such information is re-

---

fact, however, does not provide any information at all as to where a corporation's place of domicile might be.

**8.** Metro Med, Inc., is shown in the caption with a service address at 103 South Brentwood, St. Louis, Missouri. That fact is relatively meaningless on its face, for the reasons pointed out above, but this manner of designating a place for service might arguably be taken as provid-

ing a "clue" that Metro Med was a Missouri domiciliary. And in fact it was, while existing. As defendants subsequently discovered, however, its corporate charter had been forfeited on January 1, 1980, a fact which eliminates its consideration for diversity of citizenship purposes. *State of Missouri v. A.B. Collins & Co.,* 34 F.Supp. 550 (W.D.Mo.1940).

ceived by the first then-served defendant[9] to receive it, and that all other defendants not then in possession of such information may simply be ignored. This proposition parallels the theory which exists with respect to the first paragraph of § 1446(b), where receipt of service is itself the general "triggering" event, that all non-served (and non resident) defendants may be ignored. See 14 *Wright, Miller And Cooper, supra;* 1A *Moore's Federal Practice, supra.* Second, it might be suggested that the petition for removal must be filed within 30 days of the date such information is received by the first then-served defendant to receive it, but that each other defendant served at the time the removal petition is filed must join therein or consent thereto within 30 days after that defendant receives the information. That theory of course provides a parallel to the requirement under the first paragraph of § 1446(b) that each defendant served by the time the removal petition is filed must join therein or consent within 30 days following service upon that defendant. Cases *supra.*

 It is unnecessary that I choose between these two approaches as far as the present case is concerned, since it is clear that the removal petition here is timely under either. Defendants Bristol Meyers and Pfizer filed their petition well within 30 days. *of service,* much less of the later date

upon which, following investigation, they unearthed the fact of diversity; while it appears that the other defendants served at the time the removal petition was filed had no knowledge at all concerning the existence of diversity until they later received service copies of the Bristol Meyers/Pfizer removal petition. Each of those other defendants filed an appropriate consent within 30 days after receiving the copy of that petition.[10]

## C.

### DEFENDANTS' WAIVER

Plaintiff's final point is that defendants Bristol Meyers and Pfizer have waived their right to remove by virtue of their actions in the state trial and appellate court, in seeking a vacation of the trial court's certification of the class action. In the circumstances of this case, I must reject that contention.

 In the first place, it would appear that the defendants' activities in state court preceded their awareness of a basis for removal, and that those activities terminated forthwith upon becoming aware that the case was removable. It is difficult, at least, to understand why defendants might have halted their state court activities in midstream, but for that fact. And I note in this connection that the certificate from the

---

**9.** It would seem essential to retain, even in this context, the requirement that the defendant first have been served. To begin with, a defendant which had not been served will ordinarily be unaware of the suit, and would obviously have no reason or basis for investigation as to the possible diversity of the parties thereto. And even if an unserved defendant was aware of the suit, and the parties thereto, any other rule could lead to the result that the defendant might be forced to file a petition for removal before it was served—a particularly illogical result in view of the fact that the defendant might never be served.

It will thus be seen that in some instances the second paragraph of section 1446(b) provides a potential *second* trigger for the filing of a removal petition, rather than an *alternative* trigger.

**10.** According to the affidavit submitted on behalf of Rowell Laboratories, that company lacked any knowledge of a basis for removal

until receipt of a copy of the removal petition on or about March 4, 1983. Its consent was filed on April 4, 1983, which would have been timely since the 30th day, April 3, was a Sunday. See Rule 6(a), Fed.R.Civ.P. The affidavit submitted on behalf of Mayrand, Inc., states similar facts, except that the earliest day upon which a copy of the removal petition could have been received by it was April 7, 1983. Its consent, in being filed April 4, 1983, was likewise timely. Affidavits from the other four defendants which had been served as of February 28, 1983, are lacking, but since copies of the removal petition were mailed to all defendants on March 1, 1983, they obviously could not have reached any defendant prior to March 2, 1983. Since each of the remaining four defendants' consent was filed within 30 days of March 2, 1983, those consents would have been timely.

office of the Missouri Secretary of State, certifying to the fact that Metro Med's corporate charter had been forfeited—a fact crucial to a determination of whether diversity might exist—is dated February 25, 1983, subsequent to any of defendants' activities in state court. Where the second paragraph of section 1446(b) provides the operative law for a case, it is obvious that a defendant's acts in the state court, taken before the case became removable or before the defendant was able to determine that the case was removable, cannot be taken as a waiver of the right to remove.

 I would reach the same result, however, even if the defendants' state court activities here had been taken with full knowledge of the removability of the case. Those activities were directed to what defendants apparently perceived to be procedural deficiencies in the state court's ex parte certification of a class action, without any sort of hearing. Had defendants prevailed in their position, it would have meant no more than a non-prejudicial vacation of the order certifying the class. The class could later have been re-certified upon proper procedures (if such were necessary); and the underlying cause of action would have been unaffected in any event. It is commonly held that a defendant's actions in the state court which are preliminary and not conclusive in character, and which fall short of submission of the claim to a binding decision on the merits, do not constitute a waiver of the right to remove, see 1A *Moore's Federal Practice,* ¶ 0.157[9] (2d Ed. 1979); a view which finds additional support by implication in the terms of Rule 81(c), Fed.R.Civ.P. Under that view, defendants' actions here were clearly not sufficient to constitute a waiver of the right to remove.

## ORDERS

For all of the foregoing reasons I conclude that plaintiff's motion to remand should be, and the same is hereby, denied.

IT IS SO ORDERED.

## CERTIFICATION

I am of the opinion that the Order set forth hereinabove involves a controlling question of law, insofar as this Court's jurisdiction is concerned, as to which there is a substantial ground for difference of opinion; and I am further of the opinion that an immediate appeal from this Order may materially advance the ultimate termination of this litigation.