Horace T. SULLIVAN, et al., Plaintiffs,

v.

LEAF RIVER FOREST PRODUCTS, INC., et al., Defendants.

Horace T. SULLIVAN, et al., Plaintiffs,

v.

LEAF RIVER FOREST PRODUCTS, INC., et al., Defendants.

Civ. A. Nos. S91–0028(G), S91–0033(G).

United States District Court, S.D. Mississippi, S.D.

Aug. 29, 1991.

---

Robert A. Pritchard, Pascagoula, Miss., William McDaniel, John F. McDaniel, Birmingham, Ala., John J. Barrow, Franklin L. Lewis, Gene Mac Winburn, Athens, Ga., Richard W. Hamilton, Pascagoula, Miss., Irwin W. Stolz, Jr., David N. Baker, Seaton D. Purdom, Atlanta, Ga., for plaintiffs.

Joe Colingo, Pascagoula, Miss., for Bill Brabston.

James H. Heidelberg, Pascagoula, Miss., for Van Best.

Lee Davis Thames, Jackson, Miss., for Leaf River Forest Products, Richardson, Smith, Great Northern Nekoosa, Georgia Pacific.

R.T. Beard, III, Little Rock, Ark., for Intern. Paper Co.

## MEMORANDUM OPINION

GEX, District Judge.

These causes are presently before the Court on the motion of the plaintiffs to remand these cases to the Chancery Court for Jackson County, Mississippi. The Court has duly considered the record in this action, in addition to the briefs of counsel, and, being fully advised in the premises, concludes as follows:

Plaintiffs filed this suit initially in the Chancery Court of Jackson County on December 20, 1990. The suit contains over 1,800 plaintiffs that seek damages and in-

junctive relief for alleged discharges by the named defendants of 2,3,7,8–tetrachlorodibenzo–p–dioxin and other compounds into the Leaf, Pascagoula and Escatawpa Rivers. The claims include negligence, nuisance, strict liability and purpresture. Defendants are named jointly and severally liable.

Petition for removal was filed on January 16, 1991 by the International Paper Co., Inc. (IP) defendants, based on diversity jurisdiction and the presence of a separate and independent claim. On the same day, the Georgia–Pacific Corporation (GP) defendants filed their notice for removal on federal question grounds. A joint consent to remove was filed on the same day. Plaintiffs filed a motion to remand on February 4, 1991. Plaintiffs assert several grounds for remanding their actions to state court, each of which will be discussed separately.

### I. *Timeliness of Removal Notice*

First, the plaintiffs argue that remand is necessary because all defendants did not consent to removal within 30 days of service of the complaint on the first defendant. Plaintiffs correctly state that notice of removal must be filed within 30 days after the service of the summons upon the defendant. 28 U.S.C. § 1446(b). Where there are multiple defendants, all defendants must consent to the removal within 30 days after the first defendant is served. *Getty Oil Corp. v. Insurance Co. of N.Am.*, 841 F.2d 1254, 1262–63 (5th Cir. 1988).

Plaintiffs contend there was not a timely filed joint consent as required by 28 U.S.C. § 1446. If one defendant in a multiple defendant case files a timely removal petition, and subsequent to this filing and within the 30–day time limit, the other defendants file their own removal petitions or consent to the original petition, the requirements of § 1446 are met. *Albonetti v. GAF Corp. Chemical Group*, 520 F.Supp.

825, 828 (S.D.Tex.1981). Since defendants signed the joint consent to remove within a day of the first removal petition, removal was timely.

■ Plaintiffs also contend that because the joint consent was not served on plaintiffs until January 21, 1991, the date it was dispatched by mail, the late service makes the petition not timely perfected. The meaning of "prompt notice" is set out in *Alpena Power Co. v. Utility Workers Union Local 286*, 674 F.Supp. 1286, 1287 (E.D.Mich.1987). Relying on Rule 6(a) of the Federal Rules of Civil Procedure, the *Alpena* court held that notice filed within a period of less than 11 days fell within the purviews of promptness.[1] Note that under Rule 6(a), when computing time for periods of less than 11 days, intermediate Saturdays, Sundays, and legal holidays are excluded. *Id.* Since the arrival of the removal notice was on January 21, 1991, within six days of filing the notice of removal on January 16, 1991, the plaintiffs were timely notified of the removal and the removal was timely perfected.

### II. *Separate removals*

■ Plaintiffs assert that because IP's and GP's removal petitions contain separate removal theories that this is not truly a jointly consented petition but rather alternative petitions. Courts are not required to limit their considerations to the allegations of jurisdictional fact contained within the removal petition. *Rosario v. Waterman S.S. Corp.*, 158 F.Supp. 537 (S.D.N.Y. 1957). *See McKinney v. Board of Trustees*, 713 F.Supp. 185 (W.D.N.C.1989). *Adams v. Lederle Lab.*, 569 F.Supp. 234, 242–46 (W.D.Mo.1983). A court may consider all applicable jurisdictional grounds *sua sponte* whether or not the grounds were raised by a party to the lawsuit. Since all applicable avenues of removal should be considered by the Court in decid-

---

**1.** Rule 6(a) states:

In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of the court, or by any applicable statute, the day of the act, event, or default from which the designated period begins to run shall not be included.... When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation.

ing whether remand is proper, the differences in defendants' removal petitions do not affect the propriety of the removal petitions.

### III. *Plaintiffs Deny that Requisite Diversity Exists Between All Defendants and Plaintiffs*

The two sets of defendants contain different bases for diversity jurisdiction. Each group of defendants will be separately addressed.

IP, Bill Brabston and Vance Best comprise one set of defendants. IP is a New York corporation, with its principal place of business in New York. Vance Best is the Superintendent–Technical & Environmental Services of the Moss Point Mill of IP. He is a resident of Alabama. Bill Brabston is Mill Manager at IP's Moss Point facility, and also an Alabama resident. IP's removal petition is based on diversity of citizenship under 28 U.S.C. § 1332(a) and the presence of a separate and independent claim joined with an otherwise non-removable claim under 28 U.S.C. § 1441(b) and (c).

Leaf River Forest Products (Leaf River), Warren Richardson, Acker Smith, Great Northern Nekoosa Corporation (Great Northern), and GP comprise the other set of defendants. GP's removal petition is based on federal question jurisdiction under 28 U.S.C. § 1441(a) and (b).

### A. IP's Position Regarding Diversity

█ IP's removal is based on the federal diversity statute, 28 U.S.C. § 1332, which states in relevant part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—(1) citizens of different States; * * *

It is axiomatic that there must be complete diversity of citizenship (i.e., no plaintiff and no defendant may be a citizen of the same state) before a district court accepts diversity jurisdiction pursuant to the removal statute, 28 U.S.C. § 1441. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 57 L.Ed.2d 274

(1978); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The plaintiffs assert that this Court must remand these actions because the Court lacks subject matter jurisdiction. Plaintiffs contend that the presence of defendants Brabston and Best destroys the Court's diversity jurisdiction since the plaintiffs allege that these defendants are citizens of Mississippi. The defendants have the burden of proving that complete diversity exists since they are the ones seeking to invoke this Court's diversity jurisdiction. *See Getty Oil Co.*, 841 F.2d at 1259; *Aetna Casualty & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir.1986). Plaintiffs' pleadings state that the individual defendants Brabston and Best are resident citizens of Mississippi. IP provides affidavit evidence that, in fact, Brabston and Best are residents of Alabama; therefore the potential for diversity jurisdiction exists.

However, IP states that plaintiffs manipulated the facts of their pleadings in an effort to defeat the appearance of diversity. Plaintiffs' complaint names all plaintiffs as residents of Mississippi. Defendant contends that the "false" allegation in plaintiffs' pleadings that Brabston and Best are "resident citizens" of Mississippi; the "failure to investigate or deliberate misstatement of citizenship" of Brabston and Best; and the fact that several plaintiffs are residents of Alabama, while the pleadings state that all plaintiffs are residents of Mississippi, amounts to a "fraudulent attempt to divert diversity jurisdiction".

Of course, the citizenship of fraudulently joined defendants is to be disregarded when determining if a court has diversity jurisdiction. *See Miami Pipe Line Co. v. Panhandle E. Pipeline Co.*, 384 F.2d 21, 27 (10th Cir.1967); *Dew v. Illinois Cent. Gulf R.R.*, 621 F.Supp. 153, 155 (S.D.Miss. 1985). IP asserts that the Court should ignore the citizenship of Brabston and Best which would allow the Court to retain jurisdiction. However, if fraudulent joinder is not found, and there is no diversity between the IP defendants and plaintiffs, the Court must remand the case.

Federal courts must find a defendant properly joined if there is a possibility that a state court would find a cause of action stated against the in-state defendants. *Gray v. United States Fidelity and Guar.*, 646 F.Supp. 27, 29 (S.D.Miss.1986). The Fifth Circuit has discussed the burden of proving fraudulent joinder extensively, stating:

> The burden of proving a fraudulent joinder is a heavy one. The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court.

*Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983) (citations omitted), *reh'g denied* 714 F.2d 137, *cert. denied* 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984). In other words, could a state court possibly enter a valid judgment against the defendant who is alleged to have been fraudulently joined?

In this case, plaintiffs allege that Brabston and Best's individual acts of negligence played a part in causing the pollution of the river in question. According to Mississippi law, a negligence claim may be brought against:

> Any person who shall use, occupy, establish or conduct a nuisance as herein defined, or aid or abet therein, and the owner, agent or lessee of any interest in such nuisance, together with the person employed in or in control of any such nuisance by any such owner, agent, or lessee, shall be guilty of maintaining a nuisance and shall be enjoined as hereinafter provided.

Miss.Code Ann. § 95–3–3 (1972). There are also numerous cases which indicate that a tort claim can be maintained against an agent of a corporation if that individual actively participates in the commission of a tort. *Mississippi Printing v. Maris, West & Baker*, 492 So.2d 977 (Miss.1986); *Wilson v. South Cent. Miss. Farmers, Inc.*, 494 So.2d 358 (Miss.1986). An individual employee named in a tort suit may be held personally liable even though that employee is not a designated agent of the corporation. *Wilson*, 494 So.2d at 361. The individual must have some direct personal participation in the tort in order to be held personally liable. *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 173 (5th Cir.1985).

An individual may bring a nuisance action in Mississippi if the conduct of the defendant is such as to create pollution of a stream thereby rendering it unfit for the purposes to which it had been adaptable as an unpolluted body of water. *City of Oxford v. Spears*, 228 Miss. 433, 87 So.2d 914, 916 (1956). Plaintiff need only show proof of special damages such as annoyance, discomfort, inconvenience or sickness to bring suit for such. *Spears*, 87 So.2d at 916.

The individual plant employees that were responsible for regulating discharge levels from the plant might be shown personally liable under Miss.Code Ann. § 95–3–3 and case law interpreting that statute. There may also be liability in a nuisance action based on *Spears*. Therefore these individuals were not fraudulently joined. There are approximately 18 plaintiffs with Alabama addresses among the listed plaintiffs. Therefore, the requisite diversity is lacking between plaintiffs and IP defendants because Brabston and Best are residents of the same state as several plaintiffs. Because fraudulent joinder is not found and diversity is lacking, the remand of this case is required absent another basis for federal jurisdiction.

## B. GP's Diversity with Plaintiffs

Leaf River and Great Northern were acquired or merged with GP prior to this lawsuit. GP has its principal place of business and is incorporated in Georgia. Great Northern is incorporated and has its principal place of business in Maine. Leaf River is a Delaware corporation. There is no designation of the principal place of business for this corporation. Warren Richardson is the General Manager of the Leaf River plant located in New Augusta, Mississippi and a resident of Hattiesburg, Mississippi. Acker Smith is Manager of Environmental Affairs at Leaf River and a citizen of Lamar County, Mississippi. Since the majority of plaintiffs involved in this case are Mississippi residents, there is

no question of lack of diversity between the GP defendants and plaintiffs.

### IV. *Federal Question Jurisdiction*

#### A. Preemption

■ A case that contains a claim arising under a law of the United States may be removed to federal court regardless of the citizenship of the parties.[2] GP maintains that plaintiffs' claim of purpresture is preempted by the citizen suit provisions of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1387 (Clean Water Act) and that this preemption creates a federal question. The Clean Water Act's statement regarding preemption is as follows in relevant part:

(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—
(1) against any person who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order by the Administrator or a State with respect to such a standard or limitation, ...
(e) Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).

33 U.S.C. § 1365.

The Fifth Circuit has indicated that when questions regarding preemptive force necessary to create removal jurisdiction arise, one should look to the models presented by ERISA and the Labor Management Relations Act, if applicable. *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157, 1163 (5th Cir.1989), *reh'g denied* 886 F.2d 1314, *reh'g denied sub nom. National Union Fire Ins. v. American Home Ins. Group*, 886 F.2d 1314 (1989), *cert. denied sub nom.*

*American Home Ins. Group v. Aaron*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). If there is no clear evidence of congressional intent to create removal jurisdiction through preemption, the case should be remanded to state court. *Aaron*, 876 F.2d at 1163.

GP cites *Metropolitan Life Ins. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), a case which discusses ERISA extensively, for the proposition that certain federal statutes transform state law claims into federal ones for purposes of original and removal jurisdiction. The ERISA statute has been held to totally preempt all state common law contract and tort claims. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

However, the Clean Water Act has specifically preserved the right to a state common law suit, unlike the ERISA and Labor statutes. *See* 33 U.S.C. § 1365. GP argues that the United States Supreme Court held that the Clean Water Act preempts the federal common law of nuisance. *City of Milwaukee v. Illinois*, 451 U.S. 304, 101 S.Ct. 1784, 68 L.Ed.2d 114 (1981). In *Milwaukee*, the state of Illinois filed a complaint in federal court seeking abatement of a public nuisance under federal common law. While the case was pending in court, the Clean Water Act was amended to provide that effluent limits would be enforced through a permit which was required for anyone to discharge pollutants into federal waters. *Milwaukee*, 451 U.S. at 310, 101 S.Ct. at 1789. *Federal* common law suits were affected by the Clean Water Act if the pollution involved crosses state line. The United States Supreme Court ruled that the Clean Water Act's 1972 amendments completely rewrote existing water pollution law, to such an extent that the federal common law is no longer applicable

---

**2.** (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.

28 U.S.C. § 1441(a) and (b).

in water pollution cases. *Id.* at 319, 332, 101 S.Ct. at 1793, 1800.

States may impose stricter limitation standards than those prescribed by the Act and these standards may be enforced through state nuisance actions. *See* 33 U.S.C. § 1370. Individual citizens may also enforce these standards through a citizen suit. 33 U.S.C. § 1365. The Supreme Court indicated that Section 505[3] of the Act authorized citizen suits and did not limit any other state remedies that may exist. *Milwaukee,* 451 U.S. at 329, 101 S.Ct. at 1798. To bring a citizen suit, strict regulations must be followed. Also, citizen suits to enforce effluent standards cannot seek individual damages for relief. 33 U.S.C. § 1319(d).[4]

■ Preemption is the general rule in the presence of a regulatory scheme unless there is a specification by Congress that state law rights are preserved. *International Paper Co. v. Ouellette,* 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987). This case dealt with pollution across state lines (between New York and Vermont) and is cited by GP as mandating total preemption of common law suits. The Supreme Court specifically indicated that the Clean Water Act preserved the right to sue in state court under a common law claim; however, in cases which involve multiple state regulations applied to a single discharge site, federal law must prevail and preempts any state law claims. This avoids the necessity of a court applying two different sets of state pollution laws and deciding which is most applicable when the source of the pollution is in one state and that pollution crosses into another state. The Court also pointed out that there is no federal common law which should or could apply to this situation. The Court specifically stated that a strict state common law claim filed against an in-state pollution site would not be preempted by Clean Water Act provisions. *Oullette,* 479 U.S. at 481, 107 S.Ct. at 805.

**B. Purpresture**

■ GP and IP jointly argue that the purpresture[5] claim is merely a disguised federal citizen suit claim which matches Section 505 of the Clean Water Act allowing a citizen suit claim to enforce pollution standards imposed by the government.[6] A purpresture claim is traditionally filed by or on behalf of the "sovereign". 4 W. Blackstone, *Commentaries* 167. Purpresture cases generally involve situations in which a highway or navigable river is blocked by some structure, thereby interfering with public and private rights of enjoyment and use of the property involved. *Cobb v. Commissioners of Lincoln Park,* 202 Ill. 427, 67 N.E. 5 (1903). A purpresture may be abated by the *owner* of the shore affected by the interference. *Cobb,* 202 Ill. at 433, 67 N.E. 5. However, the presence of a purpresture allows the public affected by the nuisance to bring a cause of action in state common law to abate that nuisance. *Texas v. Goodnight,* 70 Tex. 682, 11 S.W. 119 (1888). *People v. Park and Ocean R.R.,* 76 Cal. 156, 18 P. 141 (1888). Many of the plaintiffs in this case are not owners of land adjacent to the rivers, but are recreational users of the waters.

A state common law claim for abatement of a nuisance is not the same as a citizen suit claim to enforce the provisions of the Clean Water Act.[7] In order to perfect a cause of action as a citizen suit under Section 505, plaintiffs must comply with the

---

3. (e) Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State Agency). 33 U.S.C. § 1365(e).

4. [t]he penalties imposed would be deposited as miscellaneous receipts in the treasury and not be recovered by the citizen bringing the suit.

5. Purpresture is defined as "an encroachment upon public rights and easements by appropriation to private use of that which belongs to the public. It is not necessarily a public nuisance. a purpresture may exist without putting the public to any inconvenience whatever." *Black's Law Dictionary* 1236 (6th Ed.1990).

6. *See* 33 U.S.C. § 1365(a) *supra* p. 10.

7. See supra, n. 6.

notice requirements of that section. Plaintiffs indicate that these notice provisions were not met in this lawsuit. Even if those notice provisions are met, only certain types of claims may be brought under the Clean Water Act. Section 505 does not allow plaintiffs to request the award of money damages for the wrong suffered. *City of Evansville, Ind. v. Kentucky Liquid Recycling*, 604 F.2d 1008, 1015 (7th Cir.1979), *cert. denied sub nom. Louisville and Jefferson Co. Metro. Sewer Dist. v. City of Evansville*, 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980). In the case at bar, plaintiffs are seeking injunctive relief, as well as individual compensatory and punitive damages. As a § 505 citizen suit under the Clean Water Act does not allow an individual damage award as part of relief sought, the Court finds that the purpresture claim is not a "masked" citizen suit under the Clean Water Act. Therefore, there is no federal question claim present.

C. Removal of Separate and Independent Claims under 28 U.S.C. § 1441(b) and (c)

▆▆▆ Removal pursuant to 28 U.S.C. § 1441(c) is a restrictive procedure.

Whenever a separate and independent claim or cause of action which would be removable if sued upon alone is joined with one or more otherwise nonremovable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion may remand all matters not otherwise within its original jurisdiction.

28 U.S.C. § 1441(c). If a claim can be considered separate and independent, removal is allowed despite the lack of requisite diversity among the parties. *Leinberger v. Webster*, 66 F.R.D. 28, 31 (E.D.N.Y. 1975). Plaintiffs must suffer more than one actionable injury in order for the case to be separate and independent. *American Fire and Casualty Co. v. Finn*, 341 U.S. 6, 9–12, 71 S.Ct. 534, 538–39, 95 L.Ed. 702 (1951). Although damage may be the result of an incident distinct in time and distance, if the damage was the result of a

singular incident the action is not removable. *Finn*, 341 U.S. at 16, 71 S.Ct. at 541. Mississippi has indicated that separate, concurrent and successive negligent acts of water pollution by different actors renders them jointly and severally liable. *D & W Jones, Inc. v. Collier*, 372 So.2d 288 (Miss. 1979). If several parties are responsible for discharging pollutants into a stream, each is liable only for his portion of resulting damages, in absence of a concerted action or common design in the acts. *Masonite Corp. v. Burnham*, 164 Miss. 840, 146 So. 292, 294 (1933). Although it appears that there is a separate and independent action involved in this case because of the commingling of effluents in the river from different sources of pollution, removal is not possible under 28 U.S.C. § 1441.

The 1990 amendment allows removal under 1441(c) only in a federal question case. Siegel, *Changes in Federal Jurisdiction and Practice Under the New (Dec. 1, 1990) Judicial Improvements Act*, 133 F.R.D. 61. The amended section states:

(c) Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

The removal in this case was perfected in January, 1991. The amendment is deemed effective in December, 1990. Siegel, *Commentary on 1990 Revision*, 28 U.S.C.A. § 1441. (1991). Therefore, since the Court has determined that there is no federal question in this cause, the presence of a separate and independent claim does not make the entire case removable.

*Conclusion*

This action does not involve a federal question. The Clean Water Act preserves the right of individuals to bring state law claims. State law nuisance claims are not preempted by the statutory provisions of the Act. The purpresture claim, although

not necessarily a nuisance type claim, is also a state law claim and therefore not preempted by the Act. Defendants cannot invoke federal question jurisdiction. The presence of non-diverse parties in both defendant groups precludes the ability to bring a diversity claim. There is no evidence of fraudulent joinder, which would allow the Court to retain jurisdiction despite the lack of diversity. The 1990 amendments to the federal rules no longer allow the removal of separate and independent claims absent the presence of a federal question claim.

Pursuant to the foregoing reasons, the Court finds that it lacks jurisdiction over the plaintiffs' actions and, therefore, must remand those actions. A separate order in conformance with the foregoing shall be submitted by counsel for the plaintiffs within ten days of the date of entry thereof.